NEW ENGLAND TREE EXPERT CO. INC. *vs.* CHARLES M. RUSSELL.

Suffolk.   March 8, 1940. — September 9, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Contract*, Of employment, Validity. *Equity Jurisdiction*, To enforce employee's covenant not to compete.

A contract by an employee not to compete with his employer's business in a specified district after the termination of his employment is divisible and will be enforced as to any part of that district that is

reasonably necessary for the protection of the good will of business of the employer there established.

Findings respecting a "general arboricultural" business warranted a conclusion that it was an established business with a good will capable of protection in a suit by the proprietor to enforce an agreement by a former employee not to engage in a similar business.

A decree in a suit by the proprietor of a "general arboricultural" business to enforce an agreement by a former employee of the plaintiff not to engage in a similar business in a specified area properly restrained him from doing such business in an area, smaller than that described in the agreement but found to have been "covered intensely" by the plaintiff, although the area described in the decree was larger than the area in which the defendant had worked for the plaintiff.

BILL IN EQUITY, filed in the Superior Court on March 24, 1939.

The decrees were entered by order of *Good, J.*

*E. D. Sharkey,* for the defendant.

*F. B. Frederick,* (*H. C. Perkins* with him,) for the plaintiff.

DOLAN, J. This suit in equity comes before us on the appeals of the defendant from an interlocutory decree overruling his exceptions to the report of a master and confirming the report, and from the final decree enjoining the defendant within a certain territory for a certain period of time from engaging in the same or any similar line of business as that carried on by the plaintiff.

The findings of the master are substantially these: The plaintiff corporation, which was organized about twelve years ago under the laws of the State of Rhode Island, maintains its principal place of business there, and has been duly admitted to transact business in this Commonwealth. Its business consists of "'general arboricultural work' including the trimming, spraying, feeding and moving of trees, tree surgery, line clearance operations and general landscaping work." Its business has been growing rapidly, and the territory covered by its solicitors and salesmen has been expanding from time to time, so that it now encompasses Connecticut as far west as the Connecticut River, including Hartford and its vicinity, and this Commonwealth as far west as Springfield, with some solicitation beyond that area in Pittsfield and its vicinity. It has done very little business in Vermont, New Hampshire and

Maine.   Such business as it has done in these States has consisted almost entirely of public work.   Public work consists of the clearing of communication and power lines and wires, and of branches of trees for public utility companies and governmental agencies.   The greater number of the plaintiff's employees are salesmen who solicit and sell its services from door to door and field men who do the actual work on the trees.   During most of its business existence the plaintiff has had a number of competitors. The activities of six of these competitors extend throughout New England.   They are particularly active in Rhode Island.   The plaintiff has between fifteen and twenty competitors in the "Boston Metropolitan Area," five or six competitors are active in and about Worcester, the same number in and about Springfield, ten in Connecticut, three or four in Vermont and four or five in New Hampshire.   In Maine there are a great many small local companies which offer the same kind of service as the plaintiff.   This condition "prevails at present."   The plaintiff has branch offices in Boston, Worcester, and Springfield, Massachusetts;   in Hartford, Connecticut;   Portland, Maine;   and Rutland, Vermont.   It owns twenty-two trucks, twelve of which are operated from Boston and eight from Pawtucket.   The number of its employees fluctuates with the seasons.   Besides salesmen and office clerks, it employs from fifty to seventy-five field men from December to April of each year, and from one hundred to one hundred fifty field men throughout the summer months.   In the year 1936 it did a gross business of about $150,000, in the year 1937 a gross business of about $200,000, and in the year 1938 (the hurricane occurred in that year) a gross business of $300,000.

The defendant was employed by the plaintiff in May, 1937.   He was instructed in the various details of its business by the plaintiff.   He became a successful salesman and later was a supervisor of salesmen and received several increases in pay.

On July 31, 1937, "Fully understanding its terms," the defendant signed a contract which each member of the

sales force was requested to execute. Any one who refused to do so "could not expect to remain with the plaintiff company." Clause nine of this contract provides that "If the employment of the . . . [defendant] shall be terminated for any cause whatsoever, he will not, for a period of three years from the date of such termination, engage in any of the New England States in the same or any similar line of business as that carried on by . . . [the plaintiff], either by himself or as agent or as servant of any individual, firm or corporation engaged in such line or similar line of business." After July, 1937, the defendant's sales fell off and his salary was reduced. From early in July, 1938, he worked "without a crew . . . canvassing for business as he had done before he had become a supervisor." On October 8, 1938, being dissatisfied, he ceased working for the plaintiff and on October 12, 1938, gave notice to the plaintiff that he was quitting. He then purchased a motor truck and has been actively engaged ever since in the tree business under the name of "The County Tree Surgery Service," operating from his home in Randolph, in this Commonwealth. He employs two men and hires a tree climber when he needs one. He is in direct competition with the plaintiff in all phases of private tree work as distinguished from public work, except tree moving. He is not equipped to do so called "public work," which consists of line clearance operations for public utilities companies. This constitutes about twenty-five per cent of the plaintiff's volume of business. While employed by the plaintiff the defendant's activities as a salesman and supervisor were largely within the territory south of United States Route 9 from Boston to Framingham and east of an irregular line from Framingham to Mattapoisett on Buzzard's Bay. They also included Attleboro, but excluded Taunton. It is mainly in these sections that the defendant has derived the greater part of sales on his own account. He actively solicits customers in that area and is anxious to obtain as much business throughout New England as he can. He is likely to increase his business as time goes on. However, as at present equipped, he cannot competently handle any work at

a greater distance from his home in Randolph than he can go to and return from in one day. Out of one hundred ninety-two customers for whom he has performed tree work on his own account, twenty had formerly been customers of the plaintiff. In two or three instances these included persons from whom he had successfully solicited tree work while in the employ of the plaintiff. He does not use the plaintiff's system of records or its system of solicitation. He took no list of the plaintiff's customers. "The knowledge, skill, training and ability which he received and acquired while in the plaintiff's employ serve him to great advantage in his own business."

The master found that the covenant was reasonable as to time, but unreasonably broad as to space, and he cut down the covenant as to space. In accordance with his findings in this respect the judge entered a decree under which the defendant is enjoined "until October 8, 1941, from engaging in the same or any similar line of business as that carried on by the plaintiff . . . within the following territory: that part of the Commonwealth . . . east of Framingham with the exception of Cape Cod east of a line from Mattapoisett to Plymouth, the entire State of Rhode Island and that part of the State of Connecticut bounded by Rhode Island on the east and by a line running from Putnam to Pomfret to Abington due south to New London and thence along the shore to Westerly, Rhode Island." This territory is that which the master found was "covered intensively" by the plaintiff's solicitors.

It is established by a long line of decisions that our law does not hold all contracts in restraint of trade, or of competition, to be invalid. Under these decisions it is settled that "a covenant restraining trade or competition, inserted in a contract for personal service, is not in itself invalid if the interest to be protected is consonant with public policy and if the restraint is limited reasonably in time and space." *Becker College of Business Administration & Secretarial Science* v. *Gross*, 281 Mass. 355, 358, and cases cited. *Metropolitan Ice Co.* v. *Ducas*, 291 Mass. 403. It is regarded as beneficial to the public that contracts for the partial

restraint of trade should be upheld to a reasonable extent. *Taylor* v. *Blanchard*, 13 Allen, 370, 373.

It is settled in this Commonwealth that such contracts are divisible and will not be enforced as to any parts of the covenant that are not reasonably necessary for the protection of the good will of the employer's business. See *Sherman* v. *Pfefferkorn*, 241 Mass. 468; *Edgecomb* v. *Edmonston*, 257 Mass. 12; *Brannen* v. *Bouley*, 272 Mass. 67; *Whiting Milk Co.* v. *O'Connell*, 277 Mass. 570; *Metropolitan Ice Co.* v. *Ducas*, 291 Mass. 403.[1]

In the present case the covenant cannot be said to be adverse to the public interest. It was entered into by the defendant, as found by the master, with full understanding, and the "plaintiff's conduct in its dealings with the defendant was not inequitable or unfair so as to deprive it of the right to specific performance . . ." within a reasonable space and time. The defendant is bound by his covenant to the extent necessary for the protection of the good will of the plaintiff's business. *Anchor Electric Co.* v. *Hawkes*, 171 Mass. 101, 106.

The defendant's contention that it is the good will of an "established" business that is to be protected and that the record does not disclose that the plaintiff has an "established" business anywhere in New England cannot be sustained in the light of the master's findings. The character of the business, its equipment, the number of its employees, its duration and continued growth, and the large volume of its gross receipts, all lead to the conclusion that its business is an established one to which good will arising from its dealings with its customers and its reputation attaches;

The defendant also contends that the territorial limitation as cut down by the master and defined in the final decree is arbitrary because predicated on the premise that the plaintiff is entitled to the relief sought in areas which it "covered intensively," and asserts that "Assuming for the moment that the plaintiff is entitled, in some degree, to

---

[1] Compare Am. Law Inst. Restatement: Contracts, § 518, but see Mass. Annotations, § 518.

the relief sought, an examination of the cases cited . . . [by the defendant] indicates that the established principle of enforcing such negative covenants in this Commonwealth invariably limit[s] the restricted territory to that route, or other area, in which the defendant worked while in the employ of the plaintiff . . . ." There is, however, no such established principle of law in this Commonwealth. The test is reasonableness. It is true that in cases cited by the defendant the covenants were enforced in particular cities or towns or in lesser areas in which the employee had worked for the employer. For the most part, however, those cases concerned businesses where the routes upon which the employee had worked for the employer were the important element, and where the relief granted was sufficient to afford reasonable protection to the good will of the business involved. See *Sherman* v. *Pfefferkorn,* 241 Mass. 468. *Brannen* v. *Bouley,* 272 Mass. 67. *Whiting Milk Co.* v. *O'Connell,* 277 Mass. 570. *Metropolitan Ice Co.* v. *Ducas,* 291 Mass. 403. We do not intimate, however, that in businesses of the character of those involved in the cases relied upon by the defendant a negative covenant broad enough in its terms could not under appropriate circumstances be enforced beyond the limits of the actual place of employment of the person concerned. The restraints imposed in the cases which the defendant cites were based on the rule of reasonableness.

What is reasonable depends upon the facts in each case, *Economy Grocery Stores Corp.* v. *McMenamy,* 290 Mass. 549, 551, and we think that on the facts the present case is stronger for the plaintiff than were the facts in the cases upon which the defendant relies. The plaintiff's business is different from those where service is rendered on defined routes daily or weekly. The services of the plaintiff would probably not be rendered to most of its patrons more than once or twice a year. By their nature, the field of its operations would be somewhat extensive. The finding of the master that it would be unfair to the plaintiff to restrict the enforcement of the covenant to the area in which the defendant worked while in the employ of the plaintiff is

supported by the other facts found.  We cannot say that the space defined in the final decree is greater than is reasonably necessary to protect the good will of the plaintiff's business from competition by the defendant in violation of his covenant.

The interlocutory decree is affirmed and the final decree is to be modified by providing that the injunction shall be in force for the period set forth in the stipulation filed by the defendant and approved by the judge and, as so modified, it is affirmed with costs.

*Ordered accordingly.*