NOVELTY BIAS BINDING Co. & another *vs.* SOLOMON SHEVRIN.

Suffolk.    May 3, 1961. — June 7, 1961.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Contract*, Covenant against competition, Validity, Liquidated damages. *Equity Jurisdiction*, Specific performance, Covenant against competition.

After the employment of the controlling manager of a corporation had been terminated by reason of theft of money from it by him and a criminal proceeding had been commenced against him, a covenant not to compete with the corporation, then made by him as part of an agreement for restitution of the stolen money, was valid and specifically enforceable in equity if reasonably limited in time and space.    [716–717]

A covenant by a former manager of a corporation operating a highly competitive business on a national scale, not to compete with it in numerous designated States for a period of three years, was reasonably limited in space and time.    [717–718]

A promissory note payable to a corporation, given by the maker "as collateral to guarantee . . . [his] compliance" with a covenant simultaneously made by him not to compete with the corporation, did not prevent the corporation from maintaining a suit in equity for specific performance of the covenant.    [718–719]

BILL IN EQUITY, filed in the Superior Court on May 2, 1960.

The suit was heard by *Lurie*, J., on a master's report.

*Robert J. De Giacomo*, (*James R. De Giacomo* with him,) for the defendant.

*Alan J. Dimond*, (*Robert I. Ectman* with him,) for the plaintiffs.

KIRK, J.  The defendant appeals from an interlocutory decree confirming a master's report and from a final decree enjoining him until November 16, 1962, from engaging directly or indirectly for himself or for others in the business of selling certain types of plastic goods within twenty-six designated States of the United States.

The master, whose report was based upon a stipulation and uncontroverted evidence offered by the plaintiffs, estab-

lished the following: The plaintiffs are allied corporations engaged in the business of manufacturing and selling narrow fabrics cut from nylon plastic and imitation leather piece goods, including weltings and automobile and furniture trimmings. The defendant was general manager and sales manager of both corporations. He had been employed by the plaintiff Novelty Bias Binding Co. since 1950; and thereafter upon the formation of the plaintiff Novelty Plastics, Inc., was employed by it and became a stockholder and director. The plaintiffs have developed detailed confidential processes which were kept secret from their customers and competitors. The defendant was the controlling factor in both corporations. He controlled and supervised the confidential material, plans, and method of trade, the sales, sales forces, and confidential relations with commission men, the procurement and purchase of material, and the formulae and processes of manufacture. The business of the plaintiffs is highly competitive, and was conducted on a national scale during the time of the defendant's employment.

The defendant's employment was terminated in 1959 because it was discovered that since 1952 he had embezzled from the plaintiffs a sum in excess of $130,000. Criminal proceedings were commenced in a District Court. On November 16, 1959, as part of an agreement to make restitution prepared by the defendant's counsel, the defendant agreed not to disclose any secret knowledge or confidential information entrusted to him during his employment and to refrain from competition with the plaintiffs within twenty-eight named States for a period of three years. He also signed a note for $30,000, payable to the plaintiffs, to be held in escrow pending compliance with the restrictive covenants. The agreement was filed in the court where the criminal proceedings had been brought.

The defendant sought employment with competitors of the plaintiffs and obtained such employment in New York on March 10, 1960. He solicited business from customers of the plaintiffs and made available to his present employer

some of the secret and confidential processes of the plaintiffs.

The master found that the restrictive agreement was reasonable as to time and territory.

The question presented is whether the contract is enforceable in so far as it restricts the defendant from competing with the plaintiffs. It has been long settled in this Commonwealth that a covenant inserted in a contract for personal service restricting trade or competition or freedom of employment is not invalid and may be enforced in equity provided it is necessary for the protection of the employer, is reasonably limited in time and space, and is consonant with the public interest. What is reasonable depends on the facts in each case. *Economy Grocery Stores Corp.* v. *McMenamy,* 290 Mass. 549, 551. *Metropolitan Ice Co.* v. *Ducas,* 291 Mass. 403, 404–405. *New England Tree Expert Co. Inc.* v. *Russell,* 306 Mass. 504, 508–509. *Cedric G. Chase Photographic Laboratories, Inc.* v. *Hennessey,* 327 Mass. 137, 139. See *Abramson* v. *Blackman,* 340 Mass. 714, 715.

At the very outset the defendant contends that the restrictive covenant is illegal and unenforceable because it is not a covenant inserted in a contract for personal service and it is not "ancillary . . . to an existing employment or contract of employment," citing Restatement: Contracts, § 515 (e), and *Bond Elec. Corp.* v. *Keller,* 113 N. J. Eq. 195. The defendant's employment had come to an end when the agreement was signed. The Restatement: Contracts carries its own caveat. Comment a of § 515 states: ". . . no implication is intended that all bargains that do not fall within these rules are legal. They may or may not be. Section 516 states some bargains that are reasonable and therefore legal; but there is a territory between the two Sections . . . which is not covered by the rules stated in either Section." A somewhat similar reservation was made by this court in *Myott* v. *Greer,* 204 Mass. 389, 392, where it was said: "The defendant's covenant which is the foundation of this suit is valid since it is attached to the

Novelty Bias Binding Co. *v.* Shevrin.

good will sold . . . to the plaintiff . . . . Were it not for that *or some other adequate consideration of public policy* it would be invalid as a covenant in restraint of trade'' (emphasis added).

We are of the opinion that the case on its facts falls in the open territory referred to. The relationship of employer and employee had terminated because of the defendant's substantial thefts over an extended period when he held a position of unusual responsibility with the plaintiffs. The covenant entered into was at least ancillary to a permissible transaction (see Williston, Contracts [Rev. ed.] § 1636), namely, an agreement for restitution for the thefts committed during employment. Reparation or restitution in criminal cases is consonant with the public policy of the Commonwealth. See G. L. c. 266, § 61, and G. L. c. 276, § 92. Plainly, in the civil aspect of the matter, the plaintiffs had a right to be paid, and the defendant had the duty to repay, the money stolen. We take notice that restitution in whole or in part, or the promise thereof, by a repentant defendant may often be an important factor in the disposition of a criminal case, and we infer that it must have been an important factor in the disposition of the defendant's case. The defendant doubtless desired to avoid imprisonment; the plaintiffs obviously desired that the good will of the businesses be protected from one who at liberty could do them immediate and grievous harm. In the circumstances disclosed, we think considerations of public policy, equity and fair dealing favor enforcement of the covenant if it is otherwise reasonable.

The limitation as to space in the decree is not greater than is reasonably necessary to protect the good will of the plaintiffs from competition by the defendant. The master has found that the plaintiffs did business in all of the States mentioned in the agreement, and that the defendant personally had almost absolute control over the arrangements whereby the plaintiffs maintained their competitive sales position throughout the country. This court has adhered to the test of reasonableness in determining

the restrictions of time and territory which may be imposed, and we have rejected a rule which would arbitrarily limit the restriction to the geographical area of the place of employment. *New England Tree Expert Co. Inc.* v. *Russell,* 306 Mass. 504, 510–511. The omission from the final decree of two States mentioned in the covenant, apparently because the business done there by the plaintiffs was relatively inconsequential, does not otherwise affect its validity. When restrictive covenants are reasonably divisible as to time or territory the court will enforce so much of the agreement as is reasonable. *Edgecomb* v. *Edmonston,* 257 Mass. 12, 19–20. *Metropolitan Ice Co.* v. *Ducas,* 291 Mass. 403, 405. *New England Tree Expert Co. Inc.* v. *Russell,* 306 Mass. 504, 509.

We consider the three year restriction to be reasonable. The plaintiffs are obliged to reorganize their personnel and perhaps their methods of production and marketing to meet the condition created by the defendant's misconduct. During this period of organization they would be particularly vulnerable to the competitive operations of a business rival who had the defendant in his service. The agreement and the decree provide the protection to cover this period.

We cannot accept the defendant's argument that his $30,000 note be considered a substitute for performance or as barring the plaintiffs' right to specific performance of the covenant. The note was expressly described "as collateral to guarantee the compliance of Solomon Shevrin with the terms of the restrictive covenant, said note to be returned upon the expiration of said agreement." As was said in *Rigs* v. *Sokol,* 318 Mass. 337, 342–343, "It is settled by our decisions and by the great weight of authority that the right to specific performance either affirmatively or by way of injunction is not lost because the contract contains a provision for the payment of a penalty or liquidated damages in the event of a breach. . . . This result is reached on the assumption that the parties ordinarily contemplate that the contract be performed and that the provision for a penalty or liquidated damages in the event of a breach is

intended as security for performance and not as a price for the privilege of nonperformance."

The interlocutory and final decrees are affirmed.

*So ordered.*