**MARCAM CORPORATION, Plaintiff,**

v.

**Frank E. ORCHARD and Datalogix International, Inc., Defendants.**

Civ. A. No. 95–10527–RCL.

United States District Court,
D. Massachusetts.

April 3, 1995.

Adam P. Forman, Testa, Hurwitz & Thibeault, Boston, MA, for plaintiff.

Paul Whitby, Lowenthal, Landau, Fischer & Ziegler, New York City, David S. Mortensen, Diane J. Perlowski, Tedeschi, Grasso & Mortensen, Boston, MA, for defendants.

## MEMORANDUM AND ORDER

LINDSAY, District Judge.

The plaintiff, Marcam Corporation, has brought this action to enforce the non-competition provisions of an employment agreement between it and its former employee, defendant Frank Orchard. Marcam also has made claims against Orchard's current employer, Datalogix International, for intentional interference with the contractual relations between Marcam and Orchard and for violation of Mass.Gen.L. c. 93A. Marcam seeks injunctive relief and damages (including damages under Mass.Gen.L. c. 93A) against Orchard and damages (including damages under Mass.Gen.L. c. 93A) against Datalogix.

Now before the court is Marcam's motion for a preliminary injunction[1] to prevent Orchard from working for Datalogix in its operations within the United States during the term of the non-competition covenant, and from using or disclosing Marcam's trade secrets and other proprietary or otherwise confidential business information. After a review of the papers, and after a hearing, the court grants Marcam's motion.

*Facts*

The following facts appear from the pleadings and affidavits filed by the parties.

---

1. This suit was originally filed in Middlesex (Massachusetts) Superior Court on March 10, 1995, and removed to this court on March 14, 1995, under 28 U.S.C. § 1332. The defendant,

Orchard, has waived any defense that this court lacks personal jurisdiction over him. Both parties concede that Massachusetts law applies to this dispute.

Marcam and Datalogix are competitors, engaged in the development and licensing of software in the "process" manufacturing industry. Process manufacturers produce products (such as food, beverages, and pharmaceuticals), by controlling chemical reactions through such procedures as mixing, separating, heating and refining. Marcam's PRISM software directly competes with software products of Datalogix called CIMPRO and GEMMS in the process manufacturing market.

In April of 1991, Orchard was hired as Marcam's Director of Development. He later became Marcam's Vice–President of Development, the position he last held with Marcam.

When he was first hired by Marcam, Orchard signed an employment agreement which contained non-competition provisions that Orchard would not compete with Marcam or accept employment with a competitor of Marcam for one year if, within five days of being notified by Orchard of his intention to resign, Marcam offered to pay him 110% of the salary offered by the competitor during that restricted year.[2] The agreement further provided that Orchard would not disclose proprietary information or material relating to Marcam's business.

For the past fourteen months, Marcam has been developing and marketing a new software product for use in the process manufacturing industry, PRISM Client/Server. Orchard was directly responsible for the research and development of PRISM Client/Server, and was involved in all other significant aspects of the product, including budget and marketing decisions.

As Director, and later Vice President of Development, Orchard was responsible for a staff of approximately sixty employees in the areas of product development, product assurance, and technical consulting with respect to several of Marcam's PRISM products. He was also responsible for managing the budget of Marcam's Development Committee—a budget in excess of one million dollars. Orchard was also involved in Marcam's sales efforts for PRISM products (especially PRISM Client/Server); and he conducted numerous sales presentations and demonstrations of such products to prospective customers.

For three and a half years Orchard was privy to top-level discussions concerning Marcam's research and development efforts pertaining to its current products, as well as to its future products. This information provided Orchard with an intimate understanding of Marcam's plans for future development and of its sales and marketing strategies.

On February 22, 1995, Orchard announced his intention to resign from Marcam, effective February 24, 1995. At that time, he advised Marcam that he had received an offer from Datalogix. Marcam informed Orchard that it wished to invoke the non-competition provision in his employment agreement and would pay him 110% of the salary offered by Datalogix. Marcam now contends that Orchard breached the employment agreement by accepting employment with Datalogix after Marcam agreed to pay 110% of the salary offered by Datalogix. Orchard contends that Marcam failed to offer him the full 110% of the salary he expected from Datalogix, and that he was therefore free to leave Marcam and enter into an employment relationship with Datalogix.

*Standard for Granting a Preliminary Injunction*

■ A party moving for a preliminary injunction must establish four things before

---

2. Section 10(b) of Orchard's employment agreement reads:

If, prior to the first (1st) anniversary of the termination of my employment with the Company for any reason whatsoever, I am offered employment, effective prior to that anniversary, by any person that is, or was, a customer or client of the Company or that is, or would be, engaging in competition with the Company, before accepting that offer, I will inform the Company, in writing, of the identity of the potential employer and the duties and salary involved. I will not accept that offer if, within five (5) business days after being so informed, the Company agrees, in writing, to pay me periodically, until that anniversary, amounts equal to the difference between one hundred ten percent (110%) of that salary and whatever lesser income I earn from suitable employment I am able to secure by diligent efforts, which I will exert.

that relief may be granted: (1) that the movant will suffer irreparable injury if the injunction is not granted, (2) that such injury outweighs any harm that the opposing party would suffer if the injunction were granted, (3) that there is a likelihood that the movant will succeed on the merits at trial and (4) that the public interest will not be adversely affected if the injunction is granted. *Jackson v. Fair,* 846 F.2d 811, 814–15 (1st Cir. 1988). As to each of these matters the court's analysis of this case follows.

*Irreparable Harm*

██ Marcam argues that the knowledge that Orchard has of its products and operations will provide Datalogix with critical proprietary and confidential information that Marcam has spent years and millions of dollars to develop. As Director of Development, and later as Vice President of Development, Orchard was privy to information pertaining to all aspects of the development and marketing of PRISM Client/Server and to significant confidential information concerning other products of Marcam.

Orchard's claim, in response, that his knowledge of Marcam's products is not translatable to Datalogix's products, because the Datalogix products use a different computer language, is not persuasive. Whether Orchard's knowledge of PRISM products is directly applicable to Datalogix's product is too narrow an inquiry. Orchard knows intimately, for example, the evolution of PRISM Client/Server, including its strengths and weaknesses. This information may be used to inform Datalogix's strategies in developing and promoting its competing GEMMS product, notwithstanding the fact that the two products use different computer languages.

Moreover, Orchard has knowledge of Marcam's marketing strategies and its plans for future development. Even if Orchard thinks he is keeping Marcam's secrets, he will, as Datalogix's employee inevitably, even if inadvertently, be influenced by the knowledge he possesses of all aspects of Marcam's development efforts. That knowledge will provide an advantage to Datalogix as it contemplates its own strategies regarding future development of products that compete with PRISM Client/Server, and with Marcam's other products.

As Judge Zobel of this District said in a recent decision, in which she granted a preliminary injunction in favor of an employer which had a similar non-competition agreement with an employee:

[The plaintiff] has so far spent over $2 million and two years developing a product that, it hopes, will be sold at a highly competitive price and will satisfy the customers. Defendant had detailed knowledge of all phases of [the plaintiff's] development and marketing strategy. Although I fully credit his testimony that he took no documents that could in any way compromise the plaintiff, he could not and did not leave behind his special knowledge of plaintiff's operation, and in serving his new employer he will inevitably draw upon that knowledge.

*Bard v. Intoccia,* 1994 WL 601944 (D.Mass. 1994).

Here, as in *Bard,* the harm to the plaintiff cannot be avoided simply by the former employee's intention not to disclose confidential information, or even by his scrupulous efforts to avoid disclosure. The problem for Marcam is that when Orchard goes to Datalogix he does not go with a *tabula rasa* with respect to Marcam's products, its development strategies, its marketing plans, its customers and other significant business information. It is difficult to conceive how all of the information stored in Orchard's memory can be set aside as he applies himself to a competitor's business and its products. On the contrary, what Orchard knows about Marcam is bound to influence what he does for Datalogix, and to the extent it does, Marcam will be disadvantaged.

In addition to its interest in protecting against the inevitable use of confidential information, Marcam has a legitimate interest in protecting the good will of its customers. *Wells ·v. Wells,* 9 Mass.App.Ct. 321, 400 N.E.2d 1317, 1319 (1980). As the person responsible for the production and development of PRISM Client/Server, Orchard enjoyed an "industry-wide reputation" for his efforts in developing PRISM Client/Server.

Marcam's customers relied on Orchard to the extent that some insisted upon conferring with him personally prior to negotiating over the licensing of PRISM Client/Server.

■ It is well-settled that a non-competition agreement may be enforced to protect a company's reputation and its relationship with its customers. *New England Tree Expert Co. v. Russell,* 306 Mass. 504, 28 N.E.2d 997, 1000 (1940); *Kroeger v. Stop & Shop,* 13 Mass.App.Ct. 310, 432 N.E.2d 566, 570 (1982). In light of Orchard's close association with PRISM Client/Server, his departure from Marcam will likely harm that product's reputation in the eyes of Marcam's customers. In promoting Datalogix's competing product, Orchard would be directly or indirectly disparaging Marcam's product. Whether Orchard publicly criticizes PRISM Client/Server, or simply promotes the competing product without explicit criticism, his association with the competing product would be enough to raise doubts in the eyes of Marcam's customers as to the relative value of PRISM Client/Server.

*Balance of Harm*

The Court finds that the harm to Marcam, should the injunction not be granted, would be substantial and irreparable, and would outweigh any harm that would flow to Orchard if the injunction were granted.

The terms of the non-competition provisions would prevent Orchard from working for a competitor of Marcam in the United States, its possessions and territories, for one year, provided Marcam agreed to pay 110% of the salary offered by the competitor. If this provision were enforced, through the injunction that Marcam seeks, Orchard would retain the option of working for Datalogix in its London office for one year (an option that Datalogix has extended to Orchard), or of seeking employment within the United States with a non-competitor of Marcam. Should Orchard choose employment with a non-competitor, Marcam is obligated to compensate Orchard for the difference between 110% of the salary offered by Datalogix and the salary Orchard is able to obtain with the non-competitor. Of course, after a year no employment possibility would be foreclosed to Orchard by the non-competition covenant: he would be free to work for Datalogix, or any other company, within the United States or anywhere else.

For all of these reasons, the court finds that the harm to Marcam in the absence of an injunction outweighs any harm to Orchard flowing from the granting of the injunctive relief sought by Marcam.

*Likelihood of Marcam's Success on the Merits*

On the merits, the dispute between the parties centers on two questions: (1) did Marcam's offer constitute 110% of the salary offered by Datalogix, and (2) is the geographic restriction in the non-competition agreement so broad as to be unenforceable?

As to the first question, Orchard contends that when he told Marcam of his intention to resign, Marcam failed to offer him 110% of the salary offered by Datalogix, as required by the non-competition agreement, thereby relieving Orchard of his obligation to decline employment with Datalogix.

By letter of March 3, 1995, Datalogix offered Orchard a *total compensation package* that included a yearly salary of $177,200, a $15,000 bonus, and 180,000 of Datalogix incentive stock options. Of these stock options, 30,000 were to vest sixty days after Orchard commenced employment with Datalogix, and the remainder would vest incrementally beginning fourteen months after his employment began. The offer to Orchard also provided that if, for any reason, Orchard did not receive the promised stock options, within six months after beginning his employment, he would receive "as additional salaried compensation" a certain value for the stock options. That value would be calculated in accordance with a formula set out in the offer letter.

Orchard contends that because Datalogix would guarantee a cash payment in lieu of the stock options, that *possible* payment should be considered part of his salary. Orchard's argument is based on an inappropriately expansive definition of "salary".

The payment in lieu of stock options is dependent upon whether Orchard receives

those options; and whether he receives them is a matter within the control of Datalogix. Because the payment in question is contingent on the occurrence of an event of doubtful certainty, the court finds that it is likely that Marcam will establish at trial that it is not an offer of "salary" to Orchard, as that term was understood by Marcam and Orchard at the time they entered into the employment agreement.[3]

■ As to the second issue, one starts with the proposition that, under Massachusetts law, a non-competition agreement is enforceable as long as it is necessary to protect the legitimate interests of an employer, and is not designed to protect an employer from ordinary competition. *Marine Contractors Co, Inc. v. Hurley,* 365 Mass. 280, 310 N.E.2d 915, 920 (1974); *Richmond Bros., Inc. v. Westinghouse Bdcst. Co,* 357 Mass. 106, 256 N.E.2d 304 (1970). The court has concluded above, in the discussion of the harm to Marcam in the absence of an injunction, that Marcam has a legitimate interest which it seeks to protect with injunctive relief. To be enforceable, however, a non-competition agreement must be reasonable in terms of its restrictions as to time, location, and other respects. *All Stainless, Inc. v. Colby,* 364 Mass. 773, 308 N.E.2d 481 (1974).

Orchard challenges the non-competition agreement only with respect to its territorial sweep. He argues that the geographic restriction in the agreement is too broad, either rendering the agreement unenforceable, or mandating a narrowing of its scope. *All Stainless, Inc. v. Colby,* 364 Mass. 773, 308 N.E.2d 481 (1974). Under the terms of the agreement Orchard is precluded from working "in the geographical area of the United States of America (including its possessions and territories) in which [Marcam] conducts its business ..." Orchard argues that, to be enforceable, the restriction must be narrowed to permit him to work in the state of New York, where Marcam has no office.

■ A geographic restriction is reasonable as long as it restricts a former employee from doing business in an area in which the company itself conducts business. *Kroeger v. Stop & Shop,* 13 Mass.App.Ct. 310, 432 N.E.2d 566, 570 (1982). In *Kroeger,* the Massachusetts Appeals Court said that "[r]estraints upon the competitive activity of a key executive may range beyond the precise geographical area of activity at the time of the employee's departure." *Id.,* at 570.[4]

Marcam's headquarters are located in Newton, Massachusetts, but it maintains a customer base and does business throughout North America. Marcam has established direct sales and support offices in the following North American metropolitan areas: Atlanta, Boston, Chicago, Cleveland, Dallas, Los Angeles, Minnesota, West Orange (New Jersey), Philadelphia, and Toronto. Because Marcam has a national market for its products, it is likely to succeed at trial in justifying its broad geographic restrictions on employment of Orchard with Marcam competitors.

*Public Interest*

Orchard offers no reason, and the Court can think of none, why the public interest would be harmed if the injunction were granted.

*Conclusion*

For the foregoing reasons, the plaintiff Marcam's request for a preliminary injunction is granted as follows, effective upon Marcam's filing of a bond in the amount of $200,000 and its giving notice to the defendants of such filing:

The defendant, Frank E. Orchard, shall be enjoined, until further order of the court:

---

**3.** The contingent nature of the payment in lieu of stock options, made it impossible for Marcam to know whether it needed to offer Orchard anything in order to fulfill its obligation under the non-competition provision. Orchard has suggested no reason to the court why Marcam should conclude otherwise than that the stock options would be given to Orchard, and that therefore no payment to him in their stead would be made by Datalogix.

**4.** The court held in that case, however, that Stop & Shop, (which had sought to prevent its former employer from competing anywhere east of the Mississippi, except for Florida, Georgia, Alabama, Mississippi, and Louisiana) could enforce a geographic restriction only as to New York, New Jersey and New England, the general areas in which it operated.

(1) from working for, or continuing in the employment of, Datalogix International, Inc., or any entity related to Datalogix International, Inc., including successors and assigns of Datalogix International, Inc. or related entities, within the United States, its territories or possessions;

(2) from entering into any form of business relationship with Datalogix International, Inc. (or any entity related to Datalogix International), within the United States, its territories or possessions, directly or indirectly, including, but not limited to, as a consultant, independent contractor, or as a vendor; and

(3) from using or disclosing any and all of Marcam's confidential and proprietary business information and trade secrets to Datalogix International, Inc., or any entity related to Datalogix International, Inc.

So ordered.