**FLEXCON COMPANY, INC., Plaintiff,**

v.

**David A. McSHERRY, Sr., Defendant.**

**No. CIV.A. 00–40206–NMG.**

United States District Court,
D. Massachusetts.

Dec. 8, 2000.

William N. Berkowitz, Daniel L. Goldberg, Donald J. Savery, Bingham, Dana & Gould, Boston, MA, for Plaintiff.

Paul L. Feldman, Gary M. Feldman, Davis, Malm & D'Agostine, P.C., Boston, MA, for Defendant.

**MEMORANDUM & ORDER**

GORTON, District Judge.

On November 30, 2000, the parties appeared before this Court at a hearing on whether to convert a temporary restraining order entered by this Court on November 17, 2000, into a preliminary injunction. At the conclusion of the hearing, the matter was taken under advisement and the TRO was extended for ten days.

*I. Background*

The plaintiff, FLEXcon Company, Inc. ("Flexcon"), is a private, family-run Massachusetts corporation with a principal place of business in Worcester, MA. Flexcon manufactures, among other things, pressure-sensitive adhesive coated film products, both for off-the-shelf purchase and specialty orders. Flexcon's products are

used in a variety of applications ranging from product identification stickers and decals to high-temperature circuit board manufacturing labels.

The defendant, David A. McSherry ("McSherry"), until recently a resident of Columbus, Nebraska, was hired by Flexcon in October, 1986 as a quality analyst. After his second promotion in September, 1992, he became a member of Flexcon's executive staff and was appointed Manager of Flexcon's Nebraska operations. Three days after he began employment as a quality analyst in 1986, McSherry signed a written employment agreement which contained, *inter alia,* non-disclosure and non-competition provisions.

On November 6, 2000, Flexcon's CEO, Michael Engel, received an undated letter from McSherry ("notice letter") in which McSherry informed Flexcon that he had accepted a position as Director of Operations of the Graphics Media Division (Ohio) of Avery–Dennison Corporation ("Avery"), one of Flexcon's chief competitors. His last day of work at Flexcon was November 17, 2000.

On November 15, 2000, Flexcon filed a verified complaint against McSherry alleging breach of contract, breach of implied covenant of good faith and fair dealing, breach of duty of loyalty, misappropriation of confidential information and taking of trade secrets. Flexcon filed a motion for injunctive relief on the same day.

At an exit interview on November 16, 2000 with Flexcon's General Counsel, McSherry indicated that he was planning to start his new position with Avery on Monday, November 20, 2000.

On November 17, 2000, the parties appeared before this Court on Flexcon's motion for a temporary restraining order. Both parties agreed to abide by a temporary restraining order, drafted by Flexcon and entered by this Court. That order prohibited McSherry from (1) engaging in any activities on behalf of Avery or its affiliates, (2) using or disclosing any confidential information of Flexcon and (3) otherwise violating the terms of his 1986 employment agreement with Flexcon.

On November 30, 2000, this Court held a hearing on Flexcon's motion for a preliminary injunction at the conclusion of which this Court took the matter under advisement and extended the TRO for ten days.

## II. Discussion

### A. Preliminary Injunction Standard

In ruling on a motion for a preliminary injunction, this Court must consider whether the plaintiff has established that (1) it has a substantial likelihood of success on the merits, (2) there exists, absent injunctive relief, a significant risk of irreparable harm, (3) the balance of hardship tilts in its favor, and (4) granting the injunction will not negatively affect the public interest. *TEC Engineering Corp. v. Budget Molders Supply Inc.,* 82 F.3d 542, 544 (1st Cir.1996). Though a district court enjoys considerable discretion in applying this test, its decision to grant or deny a preliminary injunction must be supported by adequate findings of fact and conclusions of law. *Id.;* Fed.R.Civ.P. 52(a).

### B. Likelihood of Success on the Merits

The claims in this case center around a non-competition provision contained in the employment agreement McSherry signed three days after commencing work as a quality analyst for Flexcon. That provision states:

*Restrictions on Post–Employment Competition.*

*Restricted Activity.* After the termination of my employment with the Company for any reason, absent the Company's prior written approval, I shall not engage in activities similar to the Activities in the territories in which I worked for the Company for a period of two (2) years, whether on my own behalf or that of any business organization (I) engaged in direct or indirect competition with the

Company (II) conducting a business of the type and character engaged in by the Company at the time of my termination, or (III) developing products or services competitive with those of the Company.

The parties agree that this provision, like the rest of the employment agreement, is governed by Massachusetts law.

Flexcon asserts that this provision is enforceable and applicable to the employment McSherry seeks with Avery. Flexcon contends that "territories" should be construed as encompassing the entire United States, not just the specific states of Massachusetts and Nebraska where McSherry physically worked for Flexcon, because (1) it operates on a national and international level and (2) McSherry had access to its international, strategic business planning information. Flexcon also argues that McSherry's prospective employment as a plant manager for Avery constitutes "Activities" similar to those he performed for Flexcon while head of its Nebraska facility.

■ Flexcon has not shown a likelihood of success on the merits of its claim for breach of contract because the non-competition clause in its employment agreement is ambiguous and poorly drafted. The definitions of "territories" and "Activities" (alternately capitalized or in the lower case) are non-existent. Furthermore, the agreement was signed just after McSherry was hired as a quality analyst, an entry position quite dissimilar in pay and responsibility from the manager's position to which he was ultimately promoted.

The employment agreement was presented to McSherry as routine paperwork and signed three days after he began to work for Flexcon. His original offer letter and the letters of his subsequent promotions made no mention of, nor were they conditioned upon, the restrictive covenant.

Moreover, McSherry seems to have held only token membership on Flexcon's Executive Committee in his capacity as plant manager in Nebraska. He does not appear to have been involved in the inner sanctum of running the corporation and apparently received allegedly confidential information regarding strategic planning, marketing, customers and suppliers on a distribution basis only.

The cases relied upon by Flexcon in support of its argument that the non-competition clause is enforceable and applicable to the new position which Avery has offered to McSherry are distinguishable from our case. The defendant in *EMC Corp. v. Allen*, 1997 WL 1366836 (Mass.Super.1997), worked for the plaintiff corporation in senior marketing positions for four years and was paid an annual salary of approximately $1 million, including bonuses and stock options. In *EMC* the offer of employment was contingent on the defendant's execution of a non-competition agreement with an unrestricted geographic area. The defendant was responsible for the world-wide marketing of the plaintiff's products and, during the course of his employment, had access to and used confidential, proprietary information concerning product capabilities, marketing strategies and contracts with customers. McSherry's job was not nearly as high-powered, well-compensated or international as the job at issue in the *EMC* case.

*Marcam Corp. v. Orchard*, 885 F.Supp. 294 (D.Mass.1995), relied upon by Flexcon, is also distinguishable. The defendant in *Marcam Corp.* was hired as a Director of Development and eventually became Vice-President of Development. When he was first hired he signed an employment agreement which contained a non-competition clause with very specific and tightly drafted conditions imposed on both the employer and the employee. The defendant was directly responsible for the research, development, marketing and sales of a new software product as well as several existing products. He also managed the plaintiff's development committee which had a budget of over $1 million. The

*Marcam Corp.* case is inapposite to the case at bar.

Finally, the case of *C.R. Bard v. Intoccia*, 1994 WL 601944 (D.Mass.1994), is also distinguishable. The defendant in *C.R. Bard* signed a non-competition agreement at the time he was hired in 1979 and again in 1986 when his responsibilities were increased. In 1992 he was appointed Project Manager of a secretive, $3 million project to develop a particular product. In the course of that assignment he had access to highly confidential information concerning the plaintiff's strategic, marketing and technical knowledge. The specificity of the employment agreement, the fact that it was updated as the defendant's responsibilities increased, the defendant's high-level position and his access to and use of uniquely confidential information during the course of his employment all serve to distinguish that case from the one before this Court.

### C. Irreparable Harm

█ Flexcon has also failed to establish that it faces a significant risk of irreparable harm if a preliminary injunction is not issued. McSherry states in his affidavit that he will not disclose any confidential or trade secret information of Flexcon. The affidavits of McSherry and Stephen Sharp, the General Manager of Avery's Graphics Media Division, indicate that McSherry's responsibilities at Avery will involve managing a plant, not sales, marketing or business development, and that McSherry will not disclose any confidential information of Flexcon he might retain in his head. Unlike the situation in the *Marcam Corp.* case, Flexcon has not shown that its good will is seriously implicated by McSherry's prospective employment with Avery. McSherry apparently was not in a position to develop a close association with a particular Flexcon product nor to develop close relationships with a wide range of Flexcon customers or suppliers.

Because this Court finds that Flexcon has established neither a likelihood of suc-

cess on the merits of its claim for breach of contract nor irreparable harm, Flexcon's motion for a preliminary injunction will be denied. McSherry remains under a contractual and a general duty not to disclose any confidential or trade secret information he learned during his employment with Flexcon. *See Eastern Marble Prod. Corp. v. Roman Marble, Inc.,* 372 Mass. 835, 841–42, 364 N.E.2d 799 (1977); the Employment Agreement, ¶ 2. If evidence is introduced at trial indicating that McSherry has violated the non-disclosure portion of his Employment Agreement or has communicated to his new employer confidential or trade secret information of Flexcon, this Court will be prepared to impose stiff sanctions.

### ORDER

For the foregoing reasons, Flexcon's motion for a preliminary injunction (Docket No. 8) is **DENIED.**

So ordered.