Graham, J.
The plaintiff Boch Toyota, Inc./Boch Honda (Boch) brings this action to enforce an employment agreement (Agreement) containing certain nondisclosure, confidentiality, and noncompetition provisions, signed by one of its former employees, the defendant Kim Klimoski (Klimoski). This court previously granted plaintiff a preliminary injunction as to the nondisclosure provision of the Agreement. Remaining before this court is plaintiffs motion for preliminary injunction as to the noncompetition provision of the Agreement. For the reasons discussed below, the motion is allowed.
Background
The record before this court includes a verified complaint for breach of contract (Count I) and a request for equitable relief (Count II) in the form of an injunction, plaintiffs motion for preliminary injunction with accompanying memorandum and affidavits, and an opposition memorandum and other materials in support of the opposition from which the following facts are found.
Boch Toyota, Inc. and Boch Honda are affiliated Massachusetts companies which operate multi-line automotive sales and leasing car dealerships in the Boston area. Boch’s line-makes are Honda and Toyota. Boch is currently the top-ranking car dealership in the Greater Boston area in terms of sales. A competing dealership, Herb Chambers, also sells and leases Hondas and Toyotas and now ranks second in sales behind Boch in the Greater Boston area.
*81 Prior to accepting a position as Finance Manager at Boch Toyota, Klimoski was a Finance Manager at Herb Chambers. On May 6, 2004, Klimoski interviewed for a Finance Manager position with Michael Shafman, the Vice President of Operations for Boch. Boch hired Klimoski into Boch Toyota on May 8, 2004 as a Finance Manager. Klimoski originally was seeking the position of Finance Manager at Boch Honda.
Among other things, Finance Managers are responsible for arranging financing options and lending rates with car buyers in a way that maximizes profits for the dealership. In order to make the best deal for the dealership and not lose the customer, Finance Managers are given full access to a Rate Book which contains the varying lending rates from banks, the rates at which Boch buys financing from banks and the mark-up at which it sells the financing to the customer, and the various split-rates (how Boch and the various banks have agreed to divide the profits from the financing mark-up). Boch attempts to preserve the confidentiality of this information by (1) restricting employee access to the information (only Finance Managers and senior management, not sales staff, have access to the Rate Book); (2) requiring Finance Managers to keep copies of the Rate Book locked up and not to remove them from the premises; and (3) requiring Finance Managers to sign nondisclosure agreements promising to not divulge any of the information contained in the Rate Book.
Boch also developed a computerized “sales methodology program” and database to streamline the sales process, capture sales and profits information by car line, and generate daily operating reports. Boch trains its staff, including its Finance Managers, to use this program and considers it one of the means by which it maintains its market position. Boch attempts to keep this information confidential through special password access that changes eveiy tweniy-one days.
Before beginning to work for Boch, and as a condition of employment, Klimoski was required to execute a “Confidentiality, Non-Competition and Non-Solicitation Agreement.” The covenant regarding confidentiality prohibited Klimoski from, at any time during or after her employment disclosing or in any way using confidential and proprietary information, at any time after or during her employment at Boch that she learned in the course of her employment at Boch. [1]
The noncompetition provision sets forth the following restrictions:
As a material inducement to Boch to employ and/or continue to employee (sic.) the Employee and to pay compensation to the Employee for services rendered, and in order to protect Boch’s Confidential, Consumer and Third-Party Information obtained by or disclosed to the Employee during his or her employment as well as to protect Boch’s good will, the Employee agrees that during his or her employment by Boch and for a period of twelve (12) months immediately following the last day of his or her employment with Boch for any reason, whether the termination was voluntary or involuntary, with or without reason or cause, the Employee will not:
(i) render services, directly or indirectly, either for his or her own account or as a partner, shareholder (except shares publicly traded in a recognized market), officer, employee or agent, or otherwise be employed by, connected with, participate in or consult for or with any other automobile dealership within a seven (7) mile radius of the Boch entity for whom he or she worked;
(ii) render services, directly or indirectly, either for his or her own account or as a partner, shareholder (except shares publicly traded in a recognized market), officer, employee or agent, or otherwise be employed by, connected with, participate in or consult for or with any other entity which includes within its family of companies, whether directly or indirectly, a dealership of the same line-makes as the Boch entity for whom he or she worked, or any other multi-line dealership that includes the same line-make as the Boch dealership for whom the Employee worked, within a thirty-five (35) mile radius from the Boch dealership for whom he or she worked.
Klimoski resigned her position at Boch on May 17, 2004, abruptly and without notice, and was immediately re-employed as a Finance Manager at Herb Chambers.
Boch filed the Verified Complaint and Motion for Preliminary Injunction on June 9, 2004 to enforce the confidentiality and noncompetition covenants in Klimoski’s employment agreement. Boch’s breach of contract claim alleges Klimoski breached the noncom-petition provision of the Agreement by working for Herb Chambers and that she will inevitably breach the confidentiality/nondisclosure provision by continuing to work there.
In its motion for preliminary injunction, Boch specifically asks the court to enjoin Klimoski from (1) working directly or indirectly for Herb Chambers for a period of twelve months following the date of the court’s order; (2) enjoin Klimoski from working directly or indirectly for any automotive dealership within seven miles of Boch Toyota for a period of twelve months from the date of the court’s order; (3) enjoin Klimoski from working directly or indirectly for any multi-line dealership selling Toyotas within thirty-five miles of Boch Toyota for a period of twelve months from the date of the court’s order; and (4) enjoin Klimoski from using or disclosing any confidential or proprietary information or trade secret of Boch (including but not limited to pricing information, lending rate information, vendor rate information, and proprietary business and sales methods).
*82 Discussion
In order to prevail on a motion for preliminary injunction to enjoin Klimoski from working at Herb Chambers or at any other dealership prohibited by the noncompete covenant, Boch must show a likelihood of success on the merits of its claims, that it will suffer irreparable harm without the injunctive relief requested, and that the harm to Boch, without the injunction, outweighs any harm to Klimoski for being enjoined. GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980).
In the present case Boch has shown a likelihood of success on the merits of its claims against Klimoski. When Boch hired Klimoski as a Finance Manager she signed the Agreement and agreed to be bound thereby. Employee covenants not to compete are enforceable if reasonable based on all the circumstances. All Stainless, Inc. v. Colby, 364 Mass. 773, 778 (1974). A covenant not to compete is reasonable if its purpose is to protect an employer’s legitimate business interests. Marine Contractors Co., Inc. v. Hurley, 365 Mass, at 287 (1974).
Legitimate business interests include goodwill, trade secrets, or other types of confidential information. Id. If any or all of these interests are present in a given case in which a noncompetitive covenant is part of a contractual agreement... a court will not deny enforcement of a reasonable covenant." New England Canteen Services, Inc. v. Ashley, 372 Mass. 671, 674 (1977). Courts will not enforce covenants designed to protect against ordinary competition. Marine Contractors Co., Inc. v. Hurley, 365 Mass, at 287 (1974); Richmond Bros., Inc. v. Westinghouse Broadcasting Co., Inc., 357 Mass. 106, 111 (1970).
A departing employee may cause harm to his former employer’s goodwill by possessing confidential or proprietary business information of the former employer. All Stainless, Inc., 364 Mass, at 779-80. Whether an employee actually takes any customer or supplier lists with him is not dispositive; the employee may still be enjoined if the appropriated confidential information is merely in his or her memory. Jet Spray Cooler, Inc. v. Crampton, 361 Mass. 835, 840 (1972). In the court case at bar, Klimoski cannot leave behind her recently gathered special knowledge of plaintiffs operation, and in serving her new (and previous) employer she will inevitably draw upon that knowledge. In Marcom Corp. v. Orchard, 885 F.Sup. 294, 297 (D.Mass. 1995), the court noted that “the harm to [the former employer] cannot be avoided simply by the former employee’s intention not to disclose confidential information, or even by his scrupulous efforts to avoid disclosure ... he does not go with a tabula rasa with respect to [the former employer’s] products, its development strategies, its marketing plans, its customers and other significant business information... what [the employee] knows about [the former employer] is bound to influence what he does for [the new employer], and to the extent it does, [the former employer] will be disadvantaged.”
Once it is established that an employer has protectable and legitimate business interests, the employer’s reasonable need to protect its business interests must then be weighed against the reasonableness of the restraints imposed by the non-compete covenant as well as any public interests that may be at stake. Richmond Bros., Inc., 357 Mass, at 110. Restrictive covenants in the employment context will be enforced to the extent that the restrictions are reasonably limited in time and geographic scope and are consistent with the public interest. All Stainless, Inc. v. Colby, 364 Mass. 773, 778 (1974); Novelty Bias Binding Co. v. Shevrin, 342 Mass. 714, 716 (1961).
Klimoski does not argue that the Agreement’s restrictions are unreasonable, nor has she demonstrated any harm to any public interest by the enforcement of the Agreement’s noncompetition covenant, an Agreement she freely entered into. Indeed, the restraints set forth in Klimoski’s Agreement are reasonable because of the narrow geographic scope and relatively short time frame. By its terms, she is only restricted for twelve months from working for (1) any dealership selling Toyotas/Hondas within 35 miles of Boch Toyota; (2) any dealership at all within 7 miles of Boch Toyota.
In sum, the plaintiff has demonstrated 1) a likelihood of success on the merits of its claim, 2) that the use of confidential information obtained by Klimoski would cause it irreparable harm, and 3) that the potential irreparable damage to Boch’s legitimate business interests is greater than any damage to Klimoski’s ability to find comparable employment for a period of twelve months.
ORDER
For the reasons stated above, it is hereby ORDERED that for twelve months from the date of entry of this injunction, defendant Kim Klimoski is preliminarily enjoined from:
1. Working directly or indirectly for Herb Chambers;
2. Working directly or indirectly for any automotive dealership within seven miles of Boch Toyota;
3. Working directly or indirectly for any multi-line dealership selling Toyotas within thirty-five miles of Boch Toyota;
4. Using or disclosing any confidential or proprietary information or trade secret of Boch (including but not limited to pricing information, lending rate information, vendor rate information, and proprietary business and sales methods).

Types of confidential information outlined in the agreement for illustrative purposes include: “any company, proprietary, secret, or other privileged information, technical data, *83 compilation, research, data, trade secrets, know-how . . . concerning: (a) research and development information; (b) the company’s customers, suppliers, and/or prospective customers and suppliers, including their identity, special needs, job orders, preferences, transaction histories, contacts, characteristics, agreements and prices; (c) markets; (d) hardware configuration information, software developments, or computer processed data; (e) inventions, processes, formulas, technology, designs, drawings or engineering information; (f) systems and procedures, including but not limited to the Boch Signature Book; (g) pricing structures, profitability, costs, finances, tax, projections, sales information or estimating processes; (h) product, service or marketing information, plans, studies, proposals, specifications, activities, promotions, compensation structures, incentive programs, or operations; (i) business development center computer processes or dealer communication system information; and (j) Boch policies, procedures, litigation activity or other business information disclosed to the Employee by Boch, either directly or indirectly, in writing, orally or by drawings or inspections of parts or equipment, or otherwise acquired by the Employee during his/her employment with Boch. Notwithstanding anything to the contrary in this Agreement, however, Confidential Information also includes any and all information that the Company is obligated to maintain as confidential or that the Company may receive or has received from others with any understanding, express or implied, that it will not be disclosed.”