## COMMONWEALTH *vs.* JOHN W. CANADYAN, JR.

Suffolk. September 8, 2010. - December 21, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.[1]

*Global Positioning System Device. Practice, Criminal,* Sentence, Revocation of probation. *Due Process of Law,* Probation revocation, Notice. *Notice.*

This court concluded that a District Court judge erred in finding a probation violation on the basis of a defendant's failure to comply with a condition of his probation, as a sex offender, to wear a global positioning system (GPS) monitoring device, where, given that there was no evidence of wilful noncompliance, the finding was tantamount to punishing the defendant for being homeless [577-579]; further, the judge erred in finding that the defendant violated the GPS condition of his probation by not, in the judge's estimation, making sufficient efforts to find employment, where the judge essentially collapsed the GPS condition and employment into a single condition [579].

COMPLAINT received and sworn to in the Chelsea Division of the District Court Department on July 30, 2007.

A proceeding for revocation of probation was held before *Sarah B. Singer,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Beth L. Eisenberg,* Committee for Public Counsel Services, for the defendant.

*B. Aidan Flanagan,* Special Assistant District Attorney, for the Commonwealth.

CORDY, J. On October 15, 2007, the defendant pleaded guilty in the Chelsea Division of the District Court Department to two counts of indecent assault and battery on a child under the age of fourteen and was sentenced to eighteen months in a house of correction and five years' probation. As conditions of probation, the defendant was ordered to stay away from children under the age of eighteen years, undergo sex offender evaluation and

---

[1]Chief Justice Marshall participated in the deliberation on this case prior to her retirement.

treatment deemed necessary, register as a sex offender, provide a deoxyribonucleic acid sample, and wear a global positioning system (GPS) monitoring device.[2] On release from the house of correction in December, 2008, the defendant was indigent and residing in a shelter for homeless veterans that could not provide residents with access to a reliable electrical outlet necessary for operating the GPS device.[3] The defendant was found to be in violation of the GPS condition of his probation on March 9, 2009.

A disposition hearing was held on March 24, 2009. At that hearing, the court's chief probation officer informed the judge that in the interim an arrangement had been made whereby the defendant was given a GPS device with an extended battery life that could be charged daily at one of the probation department's electronic monitoring (ELMO) offices, and that he was therefore in compliance with the GPS monitoring requirement of his probation even though he continued to reside in a homeless shelter.[4] The judge then issued a new order of probation conditions with additional conditions that the defendant (1) make at least two employment efforts per day; (2) participate in the New Directions for Men program; and (3) stay away from the city of Revere, the victim, and the victim's family.

The defendant appeals only from the finding of a probation violation and not from the additional probation conditions.[5] We vacate the finding of a probation violation.

---

[2] Having been placed on probation for a "sex offense," the defendant was required to wear a "global positioning system device" (GPS) as a condition of his probation. See G. L. c. 265, § 47.

[3] The GPS monitoring device includes an unremovable ankle bracelet; a GPS cellular telephone, which must be kept within ten feet of the ankle bracelet at all times; and a "docking port" used to charge the cellular telephone. The docking port ordinarily requires a telephone line to recharge the cellular telephone. The probation department also has available GPS monitoring devices that allow the cellular telephone to be charged by means of an electrical outlet.

[4] The chief probation officer advised the judge that at 7 A.M. the defendant reports to an electronic monitoring (ELMO) office, which is open seven days a week, to recharge the GPS device. However, at oral argument, counsel for the defendant represented that the arrangement is different from what is indicated in the record. She stated that the defendant was provided with two GPS extended battery monitoring devices, so that while he is wearing one, the other is charging at the ELMO office.

[5] At the conclusion of his brief, the defendant requested that we vacate "the

1. *Background.* A detailed recitation of the history of the case is unnecessary. After the defendant was released from prison in December, 2008, he reported to the probation department where he was informed of the specific requirements of the GPS equipment that he would need to wear and maintain during his probationary period. Those requirements included access to either a dedicated telephone line, an electrical outlet, or both. The homeless shelter where he lived was unable to provide access to either.

It is undisputed that the defendant was given an extended deadline to work out this problem. It is further undisputed that he and the probation department both worked diligently and in good faith to explore other housing options and alternative technological solutions to no avail (at least until after he was found to be in violation of his probation). In spite of these efforts and without a workable solution, the probation department issued a notice of violation in February, 2009.

At the hearing that followed the notice of violation, evidence regarding the widespread inability of homeless shelters to provide the necessary technical support for persons subject to GPS monitoring was presented,[6] as was specific evidence with respect to the defendant's efforts to secure alternate housing.[7] There was no evidence that the defendant had been anything but

_____

modified probation order issued as a result of the finding of a violation," but he presented no argument in his brief as to why the modified conditions were not warranted. Even if the judge had not found a probation violation here, she still would have been entitled to modify the conditions of the defendant's probation in light of changed circumstances. See *Commonwealth* v. *Goodwin, ante* 11, 18 (2010). In this case, the defendant accepted the conditions of probation at the time of sentencing, which included GPS monitoring. Upon release from the house of correction, the defendant became homeless and unable to set up his GPS device. This plainly constituted a change in circumstances, one that the defendant admitted. While one of the additional modifications — exclusion from the city of Revere — may or may not have been warranted by the changed circumstances, the defendant made no separate argument in his brief regarding this condition.

[6]Among other witnesses, a director of the New England Center for Homeless Veterans (NECHV) and the director of development at St. Francis House (one of the largest shelters in New England), testified that no homeless shelters in Massachusetts are presently able to facilitate the electrical (or telephone line) requirements of the probation department's GPS monitoring devices.

[7]The defendant's daughter was willing to allow the defendant to live in her home, but that was unacceptable under the terms of his probation because she

cooperative with the probation department, had violated any of the other conditions of his probation, or had wilfully remained homeless for the purpose of evading the GPS monitoring condition of his probation.

In the course of the revocation proceedings, the judge questioned whether the defendant had made an adequate effort to gain employment. The defendant then adduced evidence of the efforts that he had made (and was continuing to make) both personally and through counsellors to obtain employment.[8] After receiving this evidence, the judge concluded that the defendant's efforts were below what she requires when employment is made a condition of her probation orders. At the conclusion of the revocation hearings, she found that the defendant was in violation of the GPS condition of his probation without excuse insofar as he had failed to make sufficient efforts to find employment that might have enabled him to secure housing that would have met the requirements of the probation department's GPS system.

2. *Discussion.* The facts and circumstances of this case bring more fully into view a tension between mandatory GPS monitoring of sex offenders released on probation, see G. L. c. 265, § 47, and the practical reality of homelessness — a circumstance facing an increasing number of former sex offenders.

The GPS mandate of G. L. c. 265, § 47, is part of a regime of legislatively enacted requirements intended to protect the public from persons who have committed sex offenses and may reoffend. See G. L. c. 6, § 178K (establishing sex offender registry board). While these laws plainly serve a public purpose,

---

has children under the age of eighteen years living there as well. A sister lived out of the country. His brother lived in Michigan, where the probation department advised that the defendant would not likely be accepted as a probationer. There was also testimony from the director of development at St. Francis House (to whom the probation department had referred the defendant) who had been working with the defendant on obtaining alternative housing and employment. He testified that the defendant was on waiting lists both for housing and a rehabilitation program.

[8]The defendant called counsellors from NECHV and the Job Net Career Center in Boston, with whom he had worked to find employment. In addition to describing those efforts, these witnesses provided substantial evidence about the extraordinary obstacles facing sex offenders attempting to secure employment.

they also affect the ability of former sex offenders to reintegrate into the work force and into the community. One of the consequences has been an increase in homelessness among such persons,[9] a circumstance that, as demonstrated in this case, makes GPS monitoring utilizing the probation department's currently available technology both problematic and challenging.

This larger problem is not one that can be, or need be, solved in this case.[10] Although the Commonwealth met its burden of proving, see *Commonwealth* v. *Holmgren*, 421 Mass. 224, 226 (1995), that the defendant had not met the GPS condition of his probation, the record also makes apparent that the defendant met his consequent burden of demonstrating that his failure to comply with the GPS condition — given the original GPS technology he was required to use — was through no fault of his own. *Commonwealth* v. *Marvin*, 417 Mass. 291, 296-297 (1994) (Liacos, C.J., dissenting), quoting *Black* v. *Romano*, 471 U.S. 606, 612 (1985) ("probationer is entitled to an opportunity to show not only that he did not violate the conditions [of probation], but also that there was a justifiable excuse for any violation or that revocation is not the appropriate disposition"). We reach this conclusion on the basis of the undisputed evidence that homeless shelters would not and, as a practical matter, could not accommodate the technological requirements of the GPS

---

[9]There was substantial evidence to this effect presented through the testimony of witnesses at the defendant's violation hearing. See Many Sex Offenders End up at Shelters: Some Say State Should Help House Ex-Inmates, Boston Globe, June 18, 2007, at B1, which was admitted in evidence at the hearing and reported that sixty-five per cent of level three sex offenders live in homeless shelters. It has been more recently reported that as many as seventy-four per cent of the level three sex offenders registered in Boston are living in homeless shelters. Sex Offender Ban Sought for Homeless Shelters, Boston Globe, Nov. 18, 2008, at A1.

[10]General Laws c. 265, § 47, makes as a requirement of probation for a sex offense that the probationer "wear a global positioning system device, *or any comparable device administered by the commissioner of probation*" (emphasis added). The probation department must bear some of the burden, as it eventually did in this case, of making devices available to those whose circumstances make it nearly impossible for them otherwise to comply with this statutory condition of probation. Part of the solution to the larger problem may lie in the realm of improved or alternative technologies and equipment, and we would expect the commissioner to explore such improvements in an effort to maximize public protection, and minimize the effect of such measures on the successful reintegration of offenders into society.

equipment offered to the defendant by the probation department, and that the defendant had in good faith diligently explored other living arrangements and alternative GPS technologies to no avail. In these circumstances, where there was no evidence of wilful noncompliance, a finding of violation of the condition of wearing an operable GPS monitoring device was unwarranted, and is akin to punishing the defendant for being homeless. Cf. *Bearden* v. *Georgia*, 461 U.S. 660, 669 n.10 (1983) ("basic fairness forbids the revocation of probation when the probationer is without fault in his failure to [comply]").

It was also error for the judge to find that the defendant had violated the GPS condition of his probation by not, in the judge's estimation, making sufficient efforts to find employment. Securing employment was not a condition of probation. See *Commonwealth* v. *Ruiz*, 453 Mass. 474, 479 (2009) ("Due process . . . requires that a defendant sentenced to probation receive fair warning of conduct that may result in the revocation of probation"). While the inability to utilize the GPS monitoring equipment due to homelessness may be a "material change in the probationer's circumstances" warranting modification of the conditions of probation to include obtaining employment (or making a specific level of effort to secure employment), see *Commonwealth* v. *Goodwin*, *ante* 11, 18 (2010), the judge here essentially collapsed the GPS condition and employment into a single condition. That was error.[11]

3. *Conclusion.* For the reasons stated, we set aside the finding that the defendant violated the GPS monitoring condition of his probation.

*So ordered.*

---

[11]Throughout the proceedings, the judge was both dismissive and condescending in her treatment of defense counsel, the evidence ably presented on the defendant's behalf, and the defendant's circumstances. Such demeanor creates an unacceptable appearance of bias and partiality.