## COMMONWEALTH vs. BADER AL SAUD.

Suffolk. December 7, 2010. - April 4, 2011.

Present: IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Practice, Criminal,* Interlocutory appeal, Revocation of probation. *Due Process of Law,* Probation revocation. *Alien.*

This court declined to dismiss a criminal defendant's premature appeal as untimely, where the issue had been fully briefed and argued, and where the matter at issue — the applicability of probation conditions to deportees and other departed aliens — was a matter likely to arise in the future in other cases. [225-228]

At proceedings in the Superior Court arising from a notice of surrender filed by the probation department (department) based on a noncitizen criminal defendant's failure to comply with certain conditions of his probation following his forced departure from the United States, no violation of due process arose from the judge's order denying the defendant's motion to terminate his probation and allowing a motion to issue a default warrant for the defendant's arrest, where the conditions that the defendant was alleged to have violated (i.e., failure to pay fees, failure to verify address, and failure to report to the department upon release) were not clearly inconsistent with his departure [228-232]; and where the Commonwealth provided the defendant with ample notice of the requirements of his probation and did not have a duty to clarify the terms of his probation in light of his departure [232-234].

INDICTMENT found and returned in the Superior Court Department on December 19, 2002.

A proceeding for revocation of probation was had before *Margaret R. Hinkle,* J., and motions to dismiss probation and to issue a default warrant were heard by her.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Arnold R. Rosenfeld* (*Nicole Newman* with him) for the defendant.

*John P. Zanini,* Assistant District Attorney (*Jennifer J. Hickman,* Assistant District Attorney, with him) for the Commonwealth.

COWIN, J. The defendant, a Saudi Arabian national, pleaded guilty to misdemeanor motor vehicle homicide and was sentenced by a judge of the Superior Court (plea judge) to one year in the house of correction followed by two years' probation. The defendant received probation even though he conveyed to the Commonwealth and the court, at the time of his plea, that he intended to seek permission of the Federal government to "voluntarily depart" the United States at the conclusion of his incarceration. Normal conditions of probation were imposed, including some with which he plainly could not comply if he departed the United States. We address whether conditions of probation continue to apply to a noncitizen defendant in these circumstances.

Pursuant to an arrangement with Federal immigration officials finalized during the defendant's incarceration, the defendant was permitted to depart the United States voluntarily. Immediately upon his release from the house of correction, he was transported to the airport under Federal custody and left the country. He has not returned to the United States. It is undisputed that he did not comply with the conditions of his probation.

Nearly two years later, the probation department (department) filed a notice of surrender based on the defendant's failure to pay fees, verify his address and employment, and report to the department upon his release, as well as his failure to comply with other probation conditions. After a hearing at which violations of probation were conceded, a judge in the Superior Court (motion judge) denied the defendant's motion to terminate his probation and allowed the department's motion to issue a default warrant for the defendant's arrest.

The defendant appeals from the motion judge's order on due process grounds.[1] He contends that it was impossible for him to satisfy his probation conditions after he left the United States, that he received no notice that his probation would continue after his departure, and that he received no guidance on how to comply with probation while living abroad. We conclude, for reasons set forth below, that due process was not violated in this case. Accordingly, we affirm.

1. *Background and prior proceedings.* In 2002, the defendant,

---

[1]As discussed in part 2, *infra*, the order is interlocutory and therefore the appeal is premature. Nevertheless, we consider the matter.

a citizen of Saudi Arabia, was residing in the United States on a student visa. While driving under the influence of alcohol in Boston, he struck and killed a pedestrian. In November 2005, pursuant to an agreement with the Commonwealth, the defendant pleaded guilty to the misdemeanor of motor vehicle homicide in violation of G. L. c. 90, § 24G (*b*). He was sentenced to a two-year term of incarceration, with one year to serve in the house of correction and the balance of the sentence suspended for two years, during which time he would be on probation. Both the defendant and the Commonwealth agreed to this sentence despite anticipating that United States Immigration and Customs Enforcement (ICE) might attempt to deport the defendant based on his conviction and expired visa.[2] In his memorandum in aid of disposition, the defendant stated that the parties had agreed that the defendant would seek permission from ICE to "voluntarily depart"[3] from the United States at his own expense "upon the completion of his sentence of incarceration and parole, if applicable."[4] The Commonwealth's sentencing recommendation, in turn, included a proposed requirement that the defendant "agree to not oppose voluntary departure procedures that may be imposed upon him." These sentencing memoranda were submitted to the plea judge.

The day of his guilty plea, the defendant signed, and the plea judge approved, a Superior Court probation contract (contract) detailing the conditions of his probation. The contract stated that if the defendant failed to comply with its conditions, he

---

[2] United States Immigration and Customs Enforcement (ICE) issued a Federal warrant for the defendant's arrest the day after he pleaded guilty.

[3] Voluntary departure, pursuant to 8 U.S.C. § 1229c (2006), is "a discretionary form of relief that allows certain favored aliens — either before the conclusion of removal proceedings or after being found deportable — to leave the country willingly." *Dada* v. *Mukasey*, 544 U.S. 1, 8 (2008). Because the defendant's right to depart voluntarily is not disputed here, we need not address which aliens qualify as "favored." Voluntary departure has several advantages. Aliens given permission to depart voluntarily are allowed up to 120 days to leave the country and need not be detained during that time. *Id.* at 10-11. Moreover, while deported aliens are barred from reentering the United States for a period ranging from five to twenty years, aliens who depart voluntarily may seek readmission at any time. *Id.* at 11-12.

[4] The defendant ultimately departed after his release from State custody and while he was paroled. No suggestion has been made that this arrangement was contrary to the plea agreement between the parties.

could be ordered to appear in court, and that if he failed to appear, he could be defaulted and a warrant could be issued for his arrest. In the contract, the defendant agreed to pay a victim witness fee and probation fee, notify his probation officer of any changes of address or employment, and report to the department within twenty-four hours of his release. The contract also required him to obtain the permission of his probation officer before leaving the Commonwealth, submit to alcohol testing and treatment, and report and take other actions as directed by his probation officer or the department. Nothing in the contract reflected the Commonwealth's awareness that the defendant intended to leave the United States when his incarceration ended or that, as an alien, Federal officials could control the defendant's departure from, and right to return to, the United States.

In June, 2006, after serving seven months in the house of correction, the defendant was granted parole on or after July 10, 2006 ("upon pick up" by ICE).[5] Shortly beforehand, in anticipation of parole, the defendant's counsel obtained permission from ICE for the defendant to depart voluntarily from the United States rather than being deported or removed. ICE noted, however, that the defendant would be detained pending his departure. Defendant's counsel then filed a motion in the Superior Court, assented to by the Commonwealth, requesting that the department be ordered to release the defendant's expired passport so that he could obtain a new passport from the Saudi Arabian government. The motion noted that the defendant had been granted permission to depart upon his release from custody and intended to do so. After the motion was allowed, his passport was released.

Although granted parole, the defendant was not released but was held at the house of correction on a Federal immigration warrant (see note 2, *supra*) until July 20, 2006, when he was released to ICE custody. ICE agents picked him up at the house of correction and drove him directly to Logan Airport in Boston. He was in ICE custody until he boarded a flight to London, England, with connections to Riyadh, Saudi Arabia. He resides

---

[5]Upon his release, the defendant was subject to conditions of parole as well as conditions of probation. His compliance with parole conditions is not before us in this case.

currently in Saudi Arabia and has not returned to the United States since his departure.

Although the defendant's probationary period began as soon as he was released from State custody, and the defendant admittedly did not comply with the conditions of his probation, it was not until July, 2008, nearly two years after his departure and shortly before the period of his probation expired, that the department filed a notice of surrender alleging that the defendant had violated the contract. The alleged violations were the defendant's failure to report upon release; his failure to verify his address or employment; his failure to pay the required fees; his "[f]ailure to comply with conditions of probation"; and his failure to provide a deoxyribonucleic acid (DNA) sample. Another alleged violation was that his "[w]hereabouts [were] unknown."[6] The defendant filed a motion to "dismiss" (i.e., terminate) his probation. After an initial surrender hearing, at which the defendant was not present, the department filed a motion for issuance of a default warrant.[7]

At a hearing on the motions in September, 2008, defendant's counsel did not dispute that "technical violation[s]" of probation had occurred, instead encouraging the motion judge not to allow a warrant to issue on that basis. The motion judge denied the defendant's request to terminate probation and allowed the department's motion for issuance of a default warrant. In her memorandum of decision, the motion judge noted the alleged violations as "failure to report to [the department], failure to verify address, failure to pay fees and other violations." She held that, because the defendant could have requested modification or clarification of the conditions prior to departing voluntarily, "sufficient grounds exist for the issuance of a default warrant for the defendant's arrest based on his violations of probation." The defendant appealed, and we transferred the case on our own motion.

2. *Timing of appeal.* As an initial matter, the defendant's

---

[6]Because the motion judge did not address in her memorandum of decision the failure to provide a sample or that the defendant's whereabouts were unknown, we do not discuss those allegations further.

[7]The defendant paid the fees that were owed after the initial surrender hearing. Because his failure to pay the fees in a timely manner was a violation of his probation, this fact does not alter our conclusion.

appeal is premature. In general, probation violation hearings follow a two-step process: the judge first determines if a probation violation has occurred, and then decides how to dispose of the matter.[8],[9] See, e.g., *Commonwealth* v. *Durling*, 407 Mass. 108, 111 (1990). Although the judge may revoke or modify probation if a violation is found, the judge retains the discretion not to take either action. See, e.g., *Commonwealth* v. *Goodwin*, 458 Mass. 11, 15 (2010) ("If a defendant violates one or more conditions of probation, a judge *may* revoke his probation . . . , or return the defendant to probation, with new or revised conditions" [emphasis added]); *Commonwealth* v. *Herrera*, 52 Mass. App. Ct. 294, 295 (2001) (discussing "judge's discretionary decision whether to revoke probation or modify conditions"). See also Rule 7 (d) of the District Court Rules for Probation Violation Proceedings (2000) (permitting judges in District Court, on finding of probation violation, to revoke, modify, continue, or terminate probation). Because the judge may find a violation but impose no punishment for it, a finding of a violation is an interlocutory ruling and hence not appealable. See *Matter of a Grand Jury Subpoena*, 411 Mass. 489, 492 (1992). A defendant is entitled to challenge such a finding only on appeal from a final disposition of revocation or modification. See *Commonwealth* v. *Negron*, 441 Mass. 685, 688 (2004).[10]

Here, the motion judge did not enter a final appealable disposition altering the defendant's probation.[11] In her memorandum of decision, she did not make a formal finding of probation

[8]Although applicable only by analogy to probation proceedings in the Superior Court, see *Commonwealth* v. *Chirillo*, 53 Mass. App. Ct. 75, 80 n.5 (2001), *S.C.*, 437 Mass. 606 (2002), the District Court Rules for Probation Violation Proceedings require such a two-step procedure. See Rule 5 (b) of the District Court Rules for Probation Violation Proceedings (2000).

[9]If the probation department (department) seeks to hold a probationer in custody based on an alleged violation, a preliminary violation hearing is required first to determine if the claim of a violation is supported by probable cause. See, e.g., Rule 6 of the Uniform Magistrate Rules (1981); Rule 7 (a) of the District Court Rules for Probation Violation Proceedings (2000).

[10]Because a finding that *no* violation occurred concludes the proceedings, that finding is appealable immediately by the Commonwealth. See *Commonwealth* v. *Negron*, 441 Mass. 685, 687-688 (2004).

[11]The motion judge could not have entered a final disposition in the defendant's absence. The department conceded as much at the hearing in September, 2008. Probationers have a due process right to be heard in person before

violations; accordingly, she did not reach even the first step of the two-step process described above. She held only that "sufficient grounds exist for the issuance of a default warrant" and denied the defendant's motion to dismiss (terminate) probation.[12] Allowing issuance of a default warrant obviously is not a final appealable order, and the denial of the defendant's motion to terminate probation could be addressed in an appeal from final judgment. See *Duggan* v. *Commonwealth*, 455 Mass. 1001, 1001 n.1 (2009); *Fabre* v. *Walton*, 436 Mass. 517, 521 (2002), *S.C.*, 441 Mass. 9 (2004). If in the future there is a final disposition, either because the defendant returns to the United States or because he waives his right to be present, the party aggrieved by the decision properly may file an appeal.[13] Until that point, no appeal properly lies.[14]

The defendant relies on the principle that an interlocutory appeal is appropriate when "there might otherwise be no avenue of appeal." *Matter of a Grand Jury Subpoena, supra* at 499 n.12.[15] He notes correctly that, because he may not return to the

probation is revoked or modified. See *Commonwealth* v. *Harrison*, 429 Mass. 866, 867-868 (1999). Although this right may be waived by voluntary failure to appear, see *id.* at 868-869, because the defendant could not return to the United States without ICE permission, his absence was involuntary.

[12]Although the motion judge allowed the motion for the issuance of a default warrant based on "violations of probation," the defendant's concession that he violated his probation renders that statement unremarkable. At most, the statement constitutes a preliminary finding of violations, equivalent to a finding of probable cause to detain a probationer for alleged violations. See note 9, *supra*.

[13]Because a judge may later decide to terminate the defendant's probation, the denial of the defendant's motion is not an appealable order by him until some disposition other than termination is entered against him.

[14]Arguing that the defendant made no attempts to comply with his probation and then voluntarily left the jurisdiction, the Commonwealth contends that he "is now, for all intents and purposes, a fugitive from justice" and not entitled to any appeal. See *Commonwealth* v. *Simon*, 391 Mass. 1010, 1010 (1984) (dismissing appeal of probationer under outstanding warrant who failed to report to probation); *Commonwealth* v. *Hurley*, 391 Mass. 76, 78 (1984) (fugitive "cannot insist that his appeal be heard"). Because the defendant was forced to leave the country, whether through voluntary departure, see note 3, *supra*, or through deportation, we find unpersuasive the Commonwealth's characterization of him as a fugitive and decline to dismiss his appeal on that basis.

[15]The defendant conflates this principle with the doctrine of present execution. That doctrine permits appeal from an interlocutory order "if the order will

United States without ICE approval, he is barred "indefinitely" from attending any final revocation hearing. From this state of affairs he extrapolates that a final judgment, from which a proper appeal would lie, never can be entered in this case. We disagree. Contrary to the defendant's implications, he is not barred from the United States forever.[16] Final judgment is not "unavailable" and may enter in this case if the defendant returns to the United States. Moreover, if he wishes to resolve the matter without seeking reentry, he can waive his right to be present at the final revocation hearing. See *Commonwealth* v. *Harrison*, 429 Mass. 866, 868-869 (1999).

Nevertheless, while cautioning that the defendant's appeal is premature and that appeals from similarly situated parties generally will not be heard in the future, we consider it appropriate to decide the merits of the matter before us. Our general rule against interlocutory appeals is intended to avoid delaying litigation and wasting judicial resources on ultimately irrelevant matters. See *Fabre* v. *Walton, supra.* In this case, however, the issue has been fully briefed and argued, and the applicability of probation conditions to deportees and other departed aliens is a matter likely to arise in the future in other cases. Accordingly, to adhere rigorously to proper timing would "needlessly frustrate the administration of justice." *Commonwealth* v. *Negron, supra* at 686. We therefore decline to dismiss the defendant's appeal as untimely. See *Commonwealth* v. *Poirier*, 458 Mass. 1014, 1014-1015 (2010) (deciding appeal from preliminary finding of probation violation).

3. *Due process claims.* The defendant does not dispute that he failed to comply with the conditions of his probation. Instead, the defendant asserts that the motion judge's order and the issuance of a default warrant violated his rights to due process under the Fourteenth Amendment to the United States Constitu-

interfere with rights in a way that cannot be remedied on appeal from a final judgment." *Benoit* v. *Frederickson*, 454 Mass. 148, 151-152 (2009). Because the judge's order in this case carries no penalty and interferes with no rights, that doctrine does not apply.

[16]We are not presented in this case with a circumstance in which a defendant is barred completely from attending proceedings in the United States. In fact, the defendant's voluntary departure "facilitate[d] the possibility of readmission." *Dada* v. *Mukasey*, 554 U.S. 1, 11 (2008). See note 3, *supra.*

Commonwealth v. Al Saud.

tion and art. 12 of the Massachusetts Declaration of Rights.[17] He argues that, although the Commonwealth knew at the time of the plea agreement that he intended to depart, and knew in advance of his release that he would be departing, it failed to modify probation conditions that were clearly inconsistent with his departure. Because he could not comply with the terms of his probation once abroad and was given no guidance on how to comply, he contends that enforcing his probation is fundamentally improper. See *Commonwealth* v. *Canadyan*, 458 Mass. 574, 578-579 (2010) (finding of probation violation unwarranted when probationer lacked means to comply with probation condition); *Commonwealth* v. *Ruiz*, 453 Mass. 474, 479 (2009) (due process entitles probationers to clear guidance about what conduct is prohibited and when prohibitions apply).

The events leading to the instant appeal reflect a clear failure of attentiveness and common sense by both parties during the defendant's sentencing and incarceration. A program of probation that includes standard "supervised release" is not feasible if a defendant alien is forced by the Federal government to leave the United States on his release from State custody. When deportation or voluntary departure is anticipated prior to sentencing, the probation contract should indicate that probation will be terminated (or modified to include conditions consistent with living abroad) if the probationer is required to leave the country. Here, both the Commonwealth and the defendant knew that the defendant wished to depart voluntarily and would seek permission from ICE to do so. Nevertheless, both parties proposed a sentence that included, without discussion or qualification, a normal term of probation. Despite his intended departure, the defendant signed and raised no objections to a contract that included some probation conditions inconsistent with living abroad. Once his departure was finalized and the Commonwealth was (to some degree) alerted,[18] neither party sought to modify or terminate probation.

---

[17]Due process principles apply in probation proceedings. See *Commonwealth* v. *Ruiz*, 453 Mass. 474, 478 (2009). It has long been understood that aliens who become embroiled in our criminal justice system are entitled to the same due process rights as citizens. See *Wong Wing* v. *United States*, 163 U.S. 228, 238 (1896).

[18]As the defendant asserts, the Commonwealth received actual notice from

Clearly, the entire handling of the case by both sides was inappropriate and careless. The parties proceeded on apparently different assumptions — the Commonwealth assuming that probation would continue to apply and the defendant assuming that it would not — with no attempt to clarify or communicate. In the circumstances of this case, however, the motion judge's order and issuance of a default warrant, based on a preliminary finding of specific and limited violations of probation, does not rise to the level of a due process violation. We consider in turn, and reject, the defendant's claims that he could not comply with these conditions and that he received inadequate notice and guidance regarding those conditions.

a. *Inability to comply.* The defendant first argues that, because he was forced to leave the country, it was impossible for him to comply with the conditions of his probation. Accordingly, he argues, the motion judge violated his due process rights by requiring him to satisfy those conditions and defaulting him for his inevitable failure to do so. On the precise circumstances before us, we disagree with this argument. The particular violations underlying the motion judge's decision in this case were neither inevitable nor unavoidable and justified sufficiently the issuance of a default warrant.

We consider the motion judge's order to be based on violations of three specific probation conditions with which the defendant could have complied despite his forced departure. In her memorandum of decision, the motion judge identified three violations asserted by the department: failure to pay fees, failure to verify address, and failure to report to the department upon release.[19] The first and second of these conditions clearly were not impossible for the defendant to meet. He could have paid

his plea agreement of his plan to depart voluntarily. At the time, however, Federal officials had not approved those plans. Later, when the defendant's departure was finalized, he filed a motion for release of his passport, which noted that he had received permission from ICE to depart voluntarily and intended to do so. The Commonwealth assented to this motion and, after the motion was allowed, it was presented to the department. We do not endorse the defendant's use of such an indirect method of notification. Because the defendant's departure was expected, however, the motion suffices as actual notice in this case.

[19]As noted above, the notice of surrender also asserted "[f]ailure to comply with conditions of probation," and the motion judge's memorandum referred

his fees and verified his address from anywhere in the world. His duty to do so was not obviated simply because he left the United States immediately upon his release from the house of correction.

The defendant emphasizes the third condition, namely, that he report to the department upon his release. He suggests that, because he was in continuous ICE custody from his release until he boarded his flight, it was impossible for him to report to probation. The defendant's argument overlooks the fact that his departure was not a deportation but rather a negotiated, voluntary arrangement between ICE and defendant's counsel. While we do not dispute that he was obligated to leave the country, the timing and circumstances of his departure were, at least in part, of his own making. Moreover, nothing in the record suggests that the defendant made any effort to contact the department and explain his situation, even by telephone, while in ICE custody. Nor did he ask his counsel to contact the department on his behalf. A defendant who does not even attempt to make a good faith effort to comply with the terms of his or her probation cannot complain later that compliance was impossible.

It is true that a probationer may not be found to be in violation of conditions of probation where those conditions, despite diligent effort, cannot be met. See *Commonwealth* v. *Poirier*, 458 Mass. 1014, 1016 (2010) (finding of probation violation based on failure to comply with requirement to wear global positioning system monitor was unwarranted when department did not provide probationer with means to comply). It is also true that, because he was obligated to leave the United States, it would likely have been impossible for this defendant to comply with some of his probation conditions, such as seeking permission to leave the Commonwealth. His violations of those conditions, however, were not the violations relied upon by the department or the motion judge in defaulting the defendant. Perhaps

to unspecified "other violations." Probationers are entitled to clear notice of alleged violations, and these vague claims could not justify revocation of the defendant's probation. See *Gagnon* v. *Scarpelli*, 411 U.S. 778, 786 (1973). However, because the other three specific violations discussed herein gave the motion judge ample grounds for her order, we consider the unspecified violations to be "immaterial surplusage." *Fay* v. *Commonwealth*, 379 Mass. 498, 503 (1980).

deliberately, the department chose to limit its allegations, by and large, to those conditions that were not clearly inconsistent with a forced departure from the United States.[20] Because the defendant could have complied with the relevant conditions, finding him in violation and allowing a default warrant to issue did not infringe his due process rights.

b. *Notice and guidance.* The defendant argues also that the Commonwealth's failure to provide him with clear guidance on how to comply with the terms of his probation, in light of his departure, violated due process. He argues that, although the Commonwealth was aware that he had received permission to depart voluntarily, he was neither notified that the conditions of his probation would remain in effect after he left nor given guidance on how to comply while abroad. The defendant contends that, because he notified the Commonwealth that he had made these arrangements, the department ought to have taken the initiative to clarify the terms of his probation. However, we find no due process violation in its failure to do so.

Due process "requires that a defendant sentenced to proba-tion receive fair warning of conduct that may result in the revoca-tion of probation." *Commonwealth* v. *Ruiz,* 453 Mass. 474, 479 (2009). Accordingly, "before a defendant's term of probation can be modified or revoked on the basis that he violated a probationary condition, he must have adequate notice that the condition of probation is in effect." *Commonwealth* v. *Bunting,* 458 Mass. 569, 573 (2010). See *Commonwealth* v. *Lally,* 55 Mass. App. Ct. 601, 603 (2002) ("probationers are entitled to reasonably specific conditions that provide clear guidelines as to what and when their actions or omissions will constitute a violation of their probation"). Any ambiguities in probation conditions must be construed in favor of the defendant. *Id.*

The defendant in this case received ample notice of the require-ments of his probation. He was made aware of, and agreed in writing to, the conditions of his probation on the day of his

---

[20]The fact that these particular violations were relatively insignificant would not limit the options available to a judge in reaching a final disposition. "*Any* conduct by a person on probation which constitutes a violation of any of the conditions of his probation may form the basis for the revocation of that probation." *Rubera* v. *Commonwealth,* 371 Mass. 177, 180-181 (1976) (emphasis supplied).

guilty plea, more than eight months before he left the country. The duration and requirements of his probation were clear. Compare *Commonwealth* v. *Ruiz, supra* at 480-481 (due process violated where defendant's probation revoked for writing letters to victim while incarcerated, when defendant did not receive "fair notice" that "no contact" condition of probation applied during incarceration). The defendant's plan to depart voluntarily upon his release conflicted with his probation conditions, but it did not render the conditions ambiguous.[21]

The defendant asserts that he had no guidance on whether his probation conditions would remain in effect after his forced departure from the United States, and if so, how he could comply. He argues further that, because the Commonwealth and the court had actual notice of his plans to depart upon his release from State custody, they were obligated to provide him with that guidance. We disagree. Again, we deal only with the question whether the defendant had "fair notice" regarding the specific conditions on which the motion judge based her order.[22] As noted, the defendant's duty to pay fees, verify his address and employment, and report to the department upon release did not conflict inherently with his departure.[23] There was no basis for him to believe that those particular conditions would cease to apply simply because he was leaving the United States. Nothing in our case law or that of other jurisdictions cited by the

---

[21]The defendant also had clear notice, well in advance of his departure, of the conflict between his probation conditions and his agreement with ICE. This case does not present the question of "fair notice" when a probationer is deported or otherwise forced to leave the jurisdiction unexpectedly.

[22]Violations of conditions rendered "impossible" by the defendant's forced departure are not before us in this case. Cf. *Commonwealth* v. *Canadyan*, 458 Mass. 574, 578 (2010); *Commonwealth* v. *Poirier*, 458 Mass. 1014, 1016 (2010).

[23]Although the Commonwealth was informed that the defendant would leave the country upon his release from State custody, nothing in the record specifically indicates that the defendant or his counsel ever informed the Commonwealth that he would be leaving immediately upon his release, or that he would be in continuous ICE custody until his departure. Absent such information from the defendant, it is not clear how the Commonwealth was to know that the defendant would be leaving immediately. As noted, aliens who are given permission to depart voluntarily are allowed up to 120 days to leave the country. See note 3, *supra*. Accordingly, it appears that the Commonwealth had no reason to be aware that the defendant would be unable to report to the department upon his release and that appropriate "guidance" was necessary.

defendant suggests that a probation contract is voided in its entirety by a forced departure; if the defendant had any doubt on that point, he had abundant opportunity to inquire.[24] The Commonwealth does not have a duty to correct a probationer's unwarranted misconceptions regarding his probation conditions.

> *Order denying motion to dismiss probation affirmed.*
>
> *Order granting motion for the issuance of a default warrant affirmed.*

---

[24]The cases cited by the defendant in support of this claim support only the unremarkable proposition that, once a defendant leaves the country, his probation cannot be *supervised*. See, e.g., *United States* v. *DeLeon*, 444 F.3d 41, 56 (1st Cir. 2006) (noting defendant was "subject to supervised release" only if he was in United States). In *State* v. *Zamora-Martinez*, 210 Or. App. 22, 26 (2006), in fact, the court noted that the deported defendant "conced[ed] that he remained on probation subject to its terms and conditions after he was deported."