NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

09-P-1292                                        Appeals Court
11-P-973


COMMONWEALTH  vs.  WAJAHAT Q. MALICK
(and a companion case[1]).


No. 09-P-1292.

Plymouth.     October 1, 2013.  -  August 25, 2014.

Present: Graham, Sikora, & Hanlon, JJ.



Practice, Criminal, Appeal, Appellate Division, Probation,
     Restitution, Sentence.  Restitution.



     Indictments found and returned in the Superior Court
Department on March 26, 1991.

     A proceeding for revocation of probation was heard by
Jeffrey A. Locke, J., and a motion to revise and revoke sentence
was considered by him.


     Michael J. Traft for the defendant.
     Thomas E. Bocian, Assistant Attorney General, for the
Commonwealth.


     SIKORA, J.  These appeals, consolidated for briefing and

decision, arrive after a long and tortuous procedural history.

_____

     [1] The companion case parties are the same.

They present questions of sentencing.  One of them requires us to consider the purposes of restitution as a criminal law sanction.

In 1993, the defendant, Wajahat Q. Malick, pleaded guilty to nine indictments charging him with an elaborate scheme of larceny and embezzlement in the course of his employment as the financial comptroller of a substantial automobile dealership. The plea judge adjudicated him a common and notorious thief[2] and imposed a prison term of from eighteen to twenty years.  Upon related counts the judge added a consecutive sentence of from twelve to fifteen years suspended on condition of successful performance of a ten-year period of probation.  A primary condition of probation was the accomplishment of restitution to the dealership or its owner, Helmut Schmidt.  After a lengthy hearing, the plea judge set the restitution figure at $1,016,714.16.  He placed six other related indictments on file.

After approximately ten years of incarceration (1993 to 2003), the defendant began the probationary term.  Approximately five years later, a second judge (probation judge)[3] found that the defendant, who had paid about $291,700 in restitution, or

---

[2] General Laws c. 266, § 40, provides in pertinent part that "whoever is convicted at the same sitting of the court . . . of three distinct larcenies, shall be adjudged a common and notorious thief, and shall be punished by imprisonment in the state prison for not more than twenty years or in jail for not more than two and one-half years."

[3] The plea judge had retired.

less than thirty percent of the amount owed, had obtained a mortgage loan under a different name, was concealing assets, and was not making a good faith effort to achieve restitution. In 2009, the judge revoked probation and imposed the suspended sentence of from twelve to fifteen years.[4]

Meanwhile the dealership and Schmidt had pursued civil claims against banks allegedly negligent or reckless in their tolerance of the defendant's deception. The civil litigation was still pending at the time of the revocation of probation in 2009. It later resulted in a Superior Court damages verdict, judgment, and appellate affirmance, covering fully the losses and restitutional amount assessed against the defendant. Because the judge premised revocation of probation in part upon the victim's then uncompensated loss, we remand the case to the judge for further consideration in light of that consequence and with some discussion of his alternatives.

In a companion appeal, the defendant contends that the probation judge wrongly denied his motion in 2011 to reconsider an earlier, timely filed, motion to revise or revoke the suspended twelve-to-fifteen year sentence. He argues that the plea judge at the time (1996, when he denied the motion) had lacked evidence supporting revision or revocation and newly

---

[4] The judge stayed execution of the suspended sentence for the duration of the present appeal.

discovered by the defendant between 2009 and 2011. For multiple reasons we reject that contention and affirm the judge's denial of the proposed motion to revise or revoke the sentence.

I. Restitution-based appeal. A. Background.[5] A detailed account of the defendant's offenses appears in Bank of America, N.A. v. Prestige Imports, Inc., 75 Mass. App. Ct. 741, 742-747 (2009) (Prestige I).[6] One element of the "sophisticated and complex" scheme, id. 742, extending from 1988 to 1990 illustrated his involvement of banks in a process of embezzlement from the dealership, Prestige Imports, Inc. (Prestige). During 1990 he presented a series of nine checks signed by Schmidt and payable to South Shore Bank (SSB). Id. at 746. Schmidt intended the checks to pay down a loan from SSB to Prestige. Ibid. Upon presentment of each check to SSB, Malick requested and received from bank personnel a treasurer's check in the same amount payable to South Weymouth Savings Bank (South Weymouth). Ibid. He then deposited the treasurer's check in his own checking account at South Weymouth. Ibid. Eventually, SSB discovered the fraud, seized the funds in Prestige's accounts, foreclosed on the dealership, and sold the collateral

---

[5] We will refer only summarily to a number of procedural episodes occurring over the twenty-year train of litigation but having no significance for the issues presently before us.

[6] Bank of America, N.A., is the successor in interest to SSB.

securing the loan. The collateral included the dealership's vehicles and Schmidt's home. Id. at 747.

The defendant's plea of guilty in March of 1993 to nine counts of larceny of money resulted in his enhanced conviction as "a common and notorious thief" and in the committed sentence of from eighteen to twenty years. On pleas of guilty to two counts of larceny of motor vehicles from the dealership, the judge imposed concurrent suspended sentences of from twelve to fifteen years, from and after the committed sentence, conditioned on the probationary restitution over a ten-year span. As noted, the judge placed an additional six related indictments on file.[7]

After ten years' service of the primary sentence, the defendant began probation and restitution in late 2003. During the ensuing five years, multiple hearings addressed the defendant's requests for reduction of the restitution amount and the probation department's suggestions of surrender. The defendant achieved several reductions. In late 2005, a judge set his monthly obligation at $400. After further hearings concerning the defendant's assets and employment efforts, the

---

[7] The prosecutor and the defendant had not reached agreement upon a recommended sentencing scheme. The defendant made multiple challenges to the aggregate sentences. None succeeded. See Commonwealth v. Malick, 41 Mass. App. Ct. 1119 (1996); Commonwealth v. Malick, 46 Mass. App. Ct. 1102 (1998); Commonwealth v. Malick, 48 Mass. App. Ct. 1107 (1999).

probation judge in March of 2008 set the payment rate at $120 per week and required semiannual financial statements.

In July of 2008, the probation department moved for revocation of probation for failure to make payments and at an ensuing hearing submitted information that the defendant, under a different name, had applied for and obtained a mortgage loan and that the documents in the loan application file listed assets of approximately $150,000 in a 401(k) account and annual income of $93,000.[8]  The probation judge found that the defendant used the false name to conceal from the court and the probation department substantial undisclosed assets and that he did so to avoid his restitution obligations.  He estimated that the defendant had paid $291,714 in restitution, or somewhat less than thirty percent of the court ordered amount; and that Prestige and Schmidt were unlikely to receive additional compensation.  "In the end Mr. Schmidt loses whatever hope he may have had that this Court could assist him in recovering the embezzled funds; but I suspect over the last eighteen years, Mr. Schmidt has found that hope to dim year by year as the defendant

---

[8] The mortgage loan was based on the value of the property and not on the assets or income of the defendant.  The defendant's counsel represented to the court that the defendant used the proceeds to pay tax liens and to enable a payment of $335,000 made to Schmidt in settlement of litigation in Connecticut.  The defendant's attorney on appeal contends that the loan issued on the basis of lending practices at that time (prior to the 2009 financial crisis) and did not reflect hidden assets or a wilful failure to pay restitution.

continued to fail to make meaningful payments."[9]  As his options, the judge weighed (1) termination of probation with no further consequences, (2) reprobation, or (3) revocation with imposition of the suspended sentence ("I have no discretion to set a lower term of imprisonment").  He chose the final option and lifted the order of restitution.

Meanwhile, as a consequence of the decision in Prestige I., 75 Mass. App. Ct. at 772, and subsequent new trial, a Superior Court jury trial in 2011 resulted in a finding that SSB personnel had acted with conscious and deliberate indifference to Malick's treasurer's check scheme against Prestige, and in an award of damages covering and exceeding Malick's unpaid restitution.[10]  On August 6, 2013, this court affirmed the judgment by an unpublished memorandum and order pursuant to its rule 1:28.  Bank of America, N.A. v. Prestige Imports, Inc., 84 Mass. App. Ct. 1106 (2013) (Prestige II).  On October 3, 2013, the Supreme Judicial Court denied further appellate review, see 466 Mass. 1106.

---

[9] At this point, in January of 2009, Schmidt's civil claims against SSB were pending.  The judge added a possible reference to them, but could not know of any outcome.  "Unfortunately, on the state of the case now, the Court must leave it to Mr. Schmidt to pursue whatever other remedies he may have to seek recompense for the theft in this case."

[10] A reference in the record indicates that statutory interest and multiple damages brought the Superior Court judgment to approximately $6.7 million.

B. <u>Analysis of the restitution appeal</u>. The defendant argues that the execution of the suspended sentence has become unwarranted because Prestige and Schmidt have now achieved civil judgments exceeding the losses caused by the defendant's larceny. See <u>Prestige I</u>, 75 Mass. App. Ct. at 772; <u>Prestige II</u>, 84 Mass. App. Ct. 1106. He proposes that any enforcement of the original restitution order would inflict gratuitous punishment and approve double recovery for a single harm.

1. <u>Standard of review</u>. "How best to deal with the probationer is within the judge's discretion." <u>Commonwealth</u> v. <u>Pena</u>, 462 Mass. 183, 187 (2012), quoting from <u>Commonwealth</u> v. <u>Durling</u>, 407 Mass. 108, 111 (1990). Therefore the test on review is abuse of discretion. "There are two components to the decision to revoke probation: a retrospective factual question whether the probationer has violated a condition of probation and a discretionary determination by the judge whether violation of a condition warrants revocation of probation." <u>Commonwealth</u> v. <u>Faulkner</u>, 418 Mass. 352, 365 n.11 (1994). "Whether it is a desirable rule or not," revocation of probation requires execution of a suspended sentence "if the time has expired within which the sentence may be revised or revoked" under Mass.R.Crim.P. 29(a), 378 Mass. 899 (1979).[11] <u>Commonwealth</u> v.

---

[11] The mandate is statutory; G. L. c. 279, § 3, provides in pertinent part that, if the "suspension [of a sentence] is

Holmgren, 421 Mass. 224, 228 (1995). See Commonwealth v. Bruzzese, 437 Mass. 606, 614 (2002).

2. Authority for criminal restitution. The judge's comments at the January, 2009, revocation hearing reflected a belief that Schmidt and Prestige had little prospect of recovery of the losses caused by the defendant. He could not know the likelihood of any result in the complex civil litigation. See especially Prestige I, 75 Mass. App. Ct. at 743, 772. The decision to revoke probation necessarily triggered a long period (from twelve to fifteen years) of imprisonment. The timing of events deprived the judge of full knowledge of all potentially material circumstances of his decision. See McHoul v. Commonwealth, 365 Mass. 465, 469-470 (1974) ("Although the continuation of probation is a matter of discretion, probation may not be revoked arbitrarily or without a reason"), and cases cited; Commonwealth v. Phillips, 40 Mass. App. Ct. 801, 804 (1996) (same). In these significant and unusual circumstances of a heavy sentence premised upon an expectation now superseded, we conclude that the judge may wish to reconsider the

---

revoked, the sentence shall be in full force and effect" (emphasis supplied).

alternatives.[12]  We therefore vacate the order revoking probation and remand the revocation decision to the judge's discretion.[13]

The question remains whether on remand the judge may revoke the defendant's probation for failure to make restitution; or whether the recovery of civil damages by Prestige and Schmidt excuses the defendant's nonperformance and bars revocation.  For several reasons we conclude that the judge retains an array of alternatives including revocation.

As a criminal sanction, restitution constitutes "money or services which a court orders a defendant to pay or render to a victim as part of the disposition."  G. L. c. 258B, § 1, as appearing in St. 1996, c. 450, § 251.[14]  "[C]onsonant with the

---

[12] At oral argument the Commonwealth acknowledged that recovery of the compensatory civil damages award by Prestige and Schmidt (then pending on appeal) would warrant remand of the revocation order to the probation judge for reconsideration.

[13] Our vacatur addresses only the revocation order; it does not touch the existence and the duration of the suspended sentence, still fixed by G. L. c. 279, § 3.

[14] The concept of restitution for victims of crime has ancient roots.  Holmes observed that in Roman law, Germanic custom, and earliest English cases, reparations from the wrongdoer served to "buy off" the vengeance of the victim or his allies.  Holmes, The Common Law 15-16, 31 (Harvard Univ. Press, 1963 ed.).

The Babylonians, Hebrews, Greeks, Romans, Germans, and English all required offenders to make payments to injured parties.  See Jacob, "The Concept of Restitution:  An Historical Overview," in Restitution in Criminal Justice 34-36 (1975); Kelly, Where Offenders Pay for Their Crimes:  Victim Restitution and Its Constitutionality, 59 Notre Dame L. Rev. 685, 686

public policy of the Commonwealth," <u>Novelty Bias Binding Co</u>. v. <u>Shevrin</u>, 342 Mass. 714, 717 (1961), restitution can function as "an appropriate consideration in a criminal sentencing." <u>Commonwealth</u> v. <u>Nawn</u>, 394 Mass. 1, 6 (1985). "[R]estitution in whole or in part, or the promise thereof, by a repentant defendant may often be an important factor in the disposition of a criminal case . . . ." <u>Novelty Bias Binding Co</u>. v. <u>Shevrin</u>, <u>supra</u>.

The authority to order restitution derives from a judge's power to order conditions of probation under G. L. c. 276, § 87 (general authorization to Superior, District, and Juvenile Courts); G. L. c. 276, § 87A (authorizing placement in rehabilitative programs and community service programs); and G. L. c. 279, § 1 (authorizing the suspension of a sentence and placement on probation on discretionary terms of duration and conditions). <u>Commonwealth</u> v. <u>Denehy</u>, 466 Mass. 723, 737 (2014). See also G. L. c. 258B, § 3(o), inserted by St. 1995, c. 24, § 5, authorizing victims to request restitution as an element of final disposition and to obtain assistance from the prosecutor in the documentation of losses; and G. L. c. 211E, § 2(9), inserted by St. 1996, c. 12, § 9, enumerating as one of the purposes of the State sentencing commission the recommendation

---

(1984). See generally Laster, Criminal Restitution: A Survey of Its Past History and an Analysis of Its Present Usefulness, 5 U. Rich. L. Rev. 71, 71-80 (1970).

of policies making "offenders accountable to the community . . . through community service, restitution, and a range of intermediate sanctions" (emphasis supplied).

In addition to situations of restitution compelled by statute, a sentencing judge retains discretion to order restitution as an element of his authority to set conditions of probation.  Commonwealth v. Nawn, 394 Mass.at 8;.  Commonwealth v. McIntyre, 436 Mass. 829, 833 (2002).  "[T]he scope of restitution is limited to 'loss or damage' [which] is causally connected to the offense and [which] bears a significant relationship to the offense."  Commonwealth v. McIntyre, supra at 835 (2002), quoting from Glaubius v. State, 688 So. 2d 913, 915 (Fla. 1997).  See Commonwealth v. Rotonda, 434 Mass. 211, 220-221 (2001).  That standard is a "broad test" requiring a comprehensive assessment of the circumstances "surrounding the crime, not merely those facts establishing the elements of the crime."  Commonwealth v. Denehy, 466 Mass. at 739.  "The Commonwealth bears the burden of proving both a causal connection and the amount of the loss by a preponderance of the evidence."  Id. at 740.  See Commonwealth v. Casanova, 65 Mass. App. Ct. 750, 754-757 (2006) (failure of Commonwealth to prove a causal connection between defendant's assault and battery and withdrawal from college and forfeiture of tuition payment).  As a matter of reasonable incidental authority enabling fair

payment plans and effective monitoring, the judge may require the probationer to submit financial statements and installment reports as information of his ability to make payments.  See Commonwealth v. Nawn, 394 Mass. at 8-9.

3.  Purposes of criminal restitution.  Restitution supports the four fundamental purposes of sentencing:  incapacitation, deterrence, retribution, and rehabilitation.  Commonwealth v. McIntyre, 436 Mass. at 833.  It "also serves the ancillary purpose of compensating the victim for economic losses."  Id. at 833 n.2.  See Commonwealth v. Rotonda, supra.  Our court, too, has characterized "the purpose of restitution [as] . . . not only to compensate the victim for his or her economic loss tied to the defendant's conduct, but also to make the defendant pay for the damage [which] he or she caused as a punitive and rehabilitative  sanction."  Commonwealth v. Williams, 57 Mass. App. Ct. 917, 918 (2003).  The United States Supreme Court has struck the same theme.

> "The criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole.  Thus, it is concerned not only with punishing the offender, but also with rehabilitating him.  Although restitution does resemble a judgment 'for the benefit of' the victim, the context in which it is imposed undermines that conclusion. . . .  [T]he decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant."

Kelly v. Robinson, 479 U.S. 36, 52 (1986).

See United States v. Petersen, 98 F.3d 502, 510 (9th Cir. 1996) (criminal restitution is a means of achieving penal objectives such as deterrence, rehabilitation, or retribution as well as compensation).  See also United States v. Hairston, 888 F.2d 1349, 1355 (11th Cir. 1989) (restitution is a criminal penalty, not a civil matter; however, any settlement with the victim in a civil case should be one of the factors considered in forming the restitution order).

Commentators, too, have identified the penitential consequences of restitution.

> "Restitution goes beyond recovery and is designed to instill responsibility in criminal offenders.  Unlike other forms of penal sanctions, restitution forces the offender to answer directly for the consequences of his or her actions.  Restitution attempts to develop in the offender a degree of self-respect and pride for having righted a wrong committed."

24 C.J.S. Criminal Law § 2475, at 608-609 (2006).  As scholarly agreement, see, e.g., Note, Victim Restitution in the Criminal Process:  A Procedural Analysis, 97 Harv. L. Rev. 931, 941 (1984) ("restitution is an appropriate and effective criminal sanction that promotes the criminal law's goals of rehabilitation, deterrence, and retribution"); Harland, Monetary Remedies for the Victims of Crime:  Assessing the Role of the Criminal Courts, 30 U.C.L.A. L. Rev. 52, 119-128 (1982).

4.  Application.  In appropriate cases, then, a restitutional order may have the capacity to teach the

perpetrator the cost of his offense, to inhibit recidivist conduct, to impose the character-building benefits of honest work, and to provide the victim and society with some degree of retributive satisfaction. Because the offender's probationary freedom may depend upon his effective performance, those desirable possibilities can be realistic. We therefore conclude that the recovery of damages from the bank by Prestige and Schmidt does not preclude revocation of the defendant's probation. The penal objectives of deterrence, retribution, and rehabilitation remain open for consideration by the judge. Even full collateral compensation of a victim may leave the purposes of probationary restitution unfulfilled and the noncompliant probationer exposed to the discretionary sanctions of the sentencing court.[15,16]

---

[15] Certain Federal legislation maintains a Federal probationer's duty of restitution after collateral recovery by the victim and attempts to prevent redundant compensation. Under the Federal Mandatory Victim Restitution Act of 1996 (MVRA), the victim must return any compensation received from a third party after the defendant has made full restitution. 18 U.S.C. § 3664(j)(1)(2) (2012). The policy is that a victim's recovery in separate civil proceedings does not offset, or reduce, the restitutional amount imposed in the criminal case. Goodwin, Federal Criminal Restitution § 12:7-12:9 (2013).

[16] We have considered and rejected the defendant's alternate contention that restitution is available only for specific statutory offenses and that the plea judge unlawfully fastened the large restitutional condition onto the smaller property crimes of larceny of two automobiles from the dealership. The law provided the judge with flexible authority to attach the condition of restitution to an offense causally and

5. Judge's probationary alternatives. Our analysis leaves the judge with expansive discretion. It allows, but does not require, revocation of probation and the accompanying imposition of the suspended sentence. It is open to the judge, also, to take no action, or to reprobate upon new conditions, or to terminate probation. See Commonwealth v. Goodwin, 458 Mass. 11, 16-17 (2010); Commonwealth v. Al Saud, 459 Mass. 221, 226 (2011). Cf. Dist. Ct. R. for Probation Violation Proceedings 7(d)(i-iii) (2000). "Where a defendant has violated a condition of his probation, a judge's authority to modify or add conditions of probation is nearly unlimited should the judge decide not to imprison the defendant but to return him to probation." Commonwealth v. Goodwin, supra at 17.

Alternatives, other than revocation of probation and execution of the suspended sentence, are available. The record indicates that the judge may have revoked the defendant's

---

significantly related to the loss in the total circumstances of the connected crimes. He could and did survey Malick's entire program of larceny from the dealership, of which the misappropriation of the automobiles was a part, and employ those convictions as vehicles for restitution toward the more costly but related offenses within the scheme. The specific restitutional loss need not flow directly from the elements of the offense on which the defendant was being sentenced. The permitted "nexus" or scope of restitution extends beyond the specific harm from the elements of the particular offense underlying the sentence. The restitution need only bear a significant causal relationship to the crime. Commonwealth v. McIntyre, 436 Mass. at 833-836. Commonwealth v. Denehy, 466 Mass. at 739-740.

probation, at least in part, because he concluded that the defendant had "willfully frustrated" and "willfully obstructed" the probation department's efforts to collect restitution "by concealing assets and by using a false identity." If true, those actions would provide a basis for a judgment of criminal contempt. See Mass.R.Crim.P. 44, 378 Mass. 920 (1979); Sodones v. Sodones, 366 Mass. 121, 130 (1974) ("purpose of criminal contempt . . . is punitive: its aim is to vindicate the court's authority and to punish the contemnor for doing a forbidden act or for failing to act as ordered") (emphasis supplied); Vizcaino v. Commonwealth, 462 Mass. 266, 273 (2012).

Finally, the original sentencing judge placed six indictments and guilty pleas on file. "[T]he common-law rule, unaltered since its creation, [is] that the court retains the ability, at any time, to remove [an] indictment from the file." Commonwealth v. Simmons, 448 Mass. 687, 696 (2007). Thus the judge would also have discretion to sentence the defendant on one or more of the filed indictments. In that process he "must consider the over-all scheme of punishment employed by the [plea] judge." Id. at 699.[17]

---

[17] The established fair hearing process -- e.g., opportunity to cross-examine and to present rebuttal evidence -- would apply to a reimposition of a restitutional condition. Commonwealth v. Nawn, 394 Mass. at 6-8. Commonwealth v. Denehy, 466 Mass. at 740.

II.  Appeal from denial of motion to revise or revoke.  A. Background.  In reaction to the revocation of probation and imposition of the suspended sentence in January of 2009, the defendant pursuant to Mass.R.Crim.P. 29 filed, within sixty days of the imposition of the sentence, a motion to revise or revoke the sentence and requested that "no immediate action be taken on the motion."  In accordance with G. L. c. 278, § 28A, he pursued an appeal from the sentence to the Appellate Division of the Superior Court.  In June of 2010, the Appellate Division affirmed the sentence and dismissed the appeal.  In April of 2011, the defendant filed a further motion to revise or revoke upon the grounds of newly discovered evidence unknown to the plea judge at the time of the disposition of an original motion to revise or revoke in 1996.  The proposed newly discovered evidence consisted of two letters written in July of 1994 by counsel for Prestige and Schmidt in the civil litigation and reporting that attorney's "distinct impression" that the plea judge would favorably consider the defendant's then pending motion to revise or revoke his sentences if Malick were to show "cooperat[ion] in the civil litigation."  In support of the 2011 motion, the defendant submitted affidavit and deposition materials as evidence of cooperation in the civil actions.

---

If the judge were to reinstate revocation of probation, the due process requirements of Commonwealth v. Durling, 407 Mass. at 113, would apply.

The probation judge denied both motions and found the supporting factual representations to be "uncorroborated assertions" unworthy of a hearing.  This appeal followed.

B.  Analysis.  The standard of review of the disposition of a motion to revise or revoke is abuse of discretion.  See Commonwealth v. Derry, 26 Mass. App. Ct. 10, 13 (1988).  In this instance, multiple grounds defeat the appeal from the denials of the motions.  We shall assume, without deciding, that the motions were timely.[18]

First, it is firmly settled that "a judge may not take into account conduct of the defendant that occurs subsequent to the original sentencing" in ruling on a motion to revise or revoke (emphasis supplied).  Commonwealth v. Barclay, 424 Mass. 377, 380 (1997), and cases cited.  Here, the entire grounds submitted by the defendant related exclusively to conduct after the original 1993 sentencing (alleged cooperation in the ensuing civil litigation).  As a matter of law, the judge possessed no discretion to consider the subsequent conduct.

Second, an appeal to the Appellate Division of the Superior Court functions as an exclusive and final challenge to a sentence.  "If the appellate division decides that the original

---

[18] The defendant filed the 2009 motion within sixty days of the imposition of the suspended sentences.  The 2011 motion has the character of a motion to reconsider a long past motion to revise or revoke.

sentence or sentences should stand, it shall dismiss the appeal. Its decision shall be final."  G. L. c. 278, § 28B, second par., as appearing in St. 1968, c. 666, § 2.  Callahan v. Commonwealth, 416 Mass. 1010, 1011 (1994).  As a matter of law, the Appellate Division's affirmance of the sentence precluded any separate relief by motions to revise or revoke under Mass.R.Crim.P. 29.

Third, if the merits were properly open, we would affirm the probation judge's rulings as grounded in sound discretion. The only basis offered for relief was seventeen-year old correspondence relating a lawyer's "impression" about a judge's state of mind concerning a contingency (Malick's cooperation in the civil cases).  That information provided no reliable ground for either a hearing or a ruling upon revision or revocation of the original sentencing scheme.

Conclusion.  For these reasons we (1) vacate the order revoking probation and remand the issue of revocation to the probation judge for the exercise of his broad discretion in light of the civil damages recovery by the victims, and (2) affirm the orders denying the motions to revise or revoke the probation judge's sentencing order of January 22, 2009.

So ordered.